No. 15,849.

CARLSON *v.* DISTRICT COURT OF DENVER ET AL.
(180 P. [2d] 525)

Decided April 28, 1947.

Messrs. WOLVINGTON & WORMWOOD, for plaintiff.

Mr. A. X. ERICKSON, Mr. DON B. OLIVER, for defendant.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

THIS is an original proceeding in the nature of prohibition in which J. Norman Carlson challenges the jurisdiction of the district court of the City and County of Denver and Hon. Joseph J. Walsh, Judge of said court, and seeks to restrain Eugene Fodor from further proceeding in an action pending in said court wherein Fodor is plaintiff and Carlson is defendant.

Herein we will refer to Carlson by name or as plaintiff and to Fodor by name or as defendant; the district court and Joseph J. Walsh will referred to as the court.

The events giving rise to this litigation, according to the record, can best be presented in chronological order.

The summons in the action was issued December 17, 1945. December 18, 1945, plaintiff's attorney wrote the secretary of state as follows:

"I hand you herewith two Summons together with a Complaint thereto attached.

"The defendant is a non-resident and was at the time of the accident. His address is 427 Clinton Avenue North, Rochester, New York. Will you please inform him pursuant to the statutes.

"This service is made as required by the statutes on non-resident defendants."

December 28, 1945, Fodor docketed a case and filed his complaint in the district court in which he sought to recover from Carlson damages sustained by him in a collision between an automobile operated by Fodor and one driven by Carlson. The pertinent part of paragraph 1 of the complaint reads: "That on or about the 4th day of December, A. D. 1944, * * * the defendant negligently drove his 1938 Chevrolet coach automobile, containing license No. Illinois, 1944, 285-773, into and against the automobile driven by the plaintiff, who was then driving in the opposite direction of the defendant, to the plaintiff's great injury and damage."

The record discloses that December 18, 1945, a "registered article" was sent via air mail to Carlson, who receipted for the same December 21, 1945, and the receipt was returned to plaintiff's attorney. December 13, 1946, a so-called affidavit, subscribed and sworn to by Fodor, was filed in the district court, which, omitting the formal parts, reads as follows:

"1. That the Summons of the within action was issued on or about the 17th day of December, A. D. 1945,

and that the defendant above named is a non-resident, as will more fully appear from Paragraph I of the Complaint.

"2. That immediately subsequent thereto a Summons, together with a Complaint thereto attached was left with the Secretary of State pursuant to Chapter 16, Section 48, Subsection 1 of the 1935 C.S.A. Supplement, all of which will more fully appear from Exhibits A, B, C, D and E, hereto attached and made a part hereof; Exhibit A being a registration receipt issued by the United States Post Office Department, Exhibit B being a return receipt, Exhibit C being the numbering card from the Clerk's office of the District Court, Exhibit D being a receipt from the Secretary of State showing the filing of the Summons and Complaint wherein the above named parties are named in the within action and Exhibit E being correspondence concerning which Exhibits A, B and E were issued.

"3. The defendant has failed to appear in this Court and is therefore in default under authority of the rules of civil procedure, and has been for a long time last past.

"4. That the defendant J. Norman Carlson is not in the military service of the United States or her allies, and that he informed the plaintiff of such fact by correspondence.

"5 That the defendant is not within the jurisdiction of this court as a non-resident within the meaning of the statutes above referred to in Paragraph 2 hereof.

"Wherefore your applicant prays an Order of this Court declaring the defendant in default, the appointment of an attorney pursuant to the Soldiers' and Sailors' Relief Act, and that the within matters stand continued until on or about the 7th day of January A. D. 1947 for the taking of evidence and the entry of default judgment."

December 27, 1946, defendant Carlson entered his special appearance and moved for "an order quashing, setting aside and holding for naught the alleged and pre-

tended service of summons and the return thereof," and for grounds of the motion set forth that on December 4, 1944, he was a resident and citizen of Colorado, and, assuming that he was a nonresident on December 4, 1944, yet the court acquired no jurisdiction because of defendant's failure to comply with the mandatory provisions of section 48 (1), chapter 16, '35 C.S.A. Supplement, S.L. '37, c. 92; and, further, that on July 18, 1944, he and his wife moved from Illinois to Leadville, Colorado, and resided there and that he was a resident of the state of Colorado thereafter until May 28, 1945, where he was engaged as pastor of the First Evangelical Lutheran Church of Leadville, Colorado; that on May 28, 1945, defendant accepted a pastorate in his church at Rochester, N. Y., and that at the time of the accident, and for months prior thereto and subsequent thereto, defendant was living in and was a resident of, the state of Colorado.

This motion was supported by an attached letterhead of the First Evangelical Church at Leadville, Colorado, showing that on December 18, 1944, J. Norman Carlson was its pastor, and also by the affidavits of defendant Carlson and Kenneth M. Wormwood. In the affidavit of Wormwood, he recites: "That he has known said defendant [J. Norman Carlson] since the accident of December 4, 1944; that from his investigation and from his personal contacts with the defendant he is informed and believes that the said J. Norman Carlson moved to Leadville, Colorado, about July 18, 1944, and became Pastor of the First Evangelical Lutheran Church; that he remained Pastor of that church and was a resident and citizen of the State of Colorado from July 18, 1944 to May 28, 1945; that he was a resident and citizen of the State of Colorado on December 4, 1944."

Carlson, in his affidavit, states, inter alia: "That on December 4, 1944, he was a resident and citizen of the State of Colorado; that at said time he was the Pastor of the First Evangelical Lutheran Church of Leadville,

Colorado; that he resided at said time at 218 East 9th Street, Leadville, Colorado, his family consisting of his wife and himself,

"That affiant moved from Illinois to Colorado on July 18, 1944, at which time he became a resident and citizen of the State of Colorado, and remained so until May 28, 1945, when he moved from Colorado.

"That at the time of the accident referred to the affiant was riding an automobile which bore an Illinois license, but that the affiant had simply neglected to obtain a Colorado license, which he did shortly thereafter."

In this state of the record a hearing was held on January 7, 1947 on defendant's motion to quash, set aside and hold for naught the alleged service of summons and return thereof, at the conclusion of which the court entered an order denying the motion and giving defendant twenty days within which to appear. Thereupon plaintiff instituted this proceeding asking for an order in the nature of a writ of prohibition, and a rule to show cause was issued. Proper pleadings and briefs were filed, and the cause is now at issue.

Four questions are presented for our determination: 1. Does the record show that defendant was a nonresident of the state of Colorado? 2. Was there sufficient compliance with the provisions of section 48 (1), chapter 16, '35 C.S.A. Supplement, S.L. '37, c. 92, to give the court jurisdiction? 3. The record considered, is the question of jurisdiction properly presented by a special appearance and motion to quash? 4. Should this court take jurisdiction?

1. Section 48 (1), chapter 16, '35 C.S.A. Supplement, S.L. '37, c. 92, provides in part:

"The *operation by a non-resident* of a motor vehicle on a public highway in this state shall be deemed equivalent to an appointment by such non-resident of the Secretary of state *to be his or its true and lawful attorney,* upon whom may be served all *lawful civil processes* in any actions or proceedings against him or it, *growing*

*out of any accident* or collision in which *such non-resident* may be involved while operating a motor vehicle on such public highway; and such operation shall be deemed a signification of such agreement that *any such process against him* or it which is so served shall be of the same legal force and validity as if served on such *non-resident personally within the state.*

"*Service of such process shall be made by leaving a copy of the process,* with a fee of two dollars ($2.00) which shall be taxed as part of the costs of the proceeding, with the Secretary of State, or in his office, and *such service* shall be sufficient service upon *such nonresident defendant* who has hereunder appointed the Secretary of State his or its true and lawful attorney therefor; *Provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff to the defendant, and the defendant's return receipt* or, in the event the defendant refuses to accept such registered mail, the registered mail with his or its refusal thereon *and the plaintiff's affidavit of compliance herewith are filed with the papers in the case on or before the return day of the process, or within such further time as the court may allow;* \* \* \*" (Italics ours)

In the complaint filed in the district court there is an allegation from which it might be inferred that on December 4, 1944, at the time of the accident, plaintiff was a nonresident of the state of Colorado. That allegation is, "the defendant negligently drove his 1938 Chevrolet coach automobile, containing license No. Illinois, 1944, 285-773." At most this allegation could be no more than a presumption that at the time plaintiff was a nonresident. Other than this there is no allegation in the complaint, or elsewhere, charging that plaintiff was a nonresident of the state of Colorado on December 4, 1944. December 18, 1945, in a letter written to the secretary of state by plaintiff's attorney, there is a statement, "The defendant is a non-resident and was at the

time of the accident." And the further statement that, "This service is made as required by the statutes on non-resident defendants." In a letter from defendant's attorney to Reverend Carlson, bearing date December 18, 1945, the same date as the letter to the secretary of state, we find the following:

"I am enclosing herewith a copy of Summons together with Complaint thereto attached. *The original has been filed with the Clerk of the District Court here.* You can see I am having difficulty in getting anywhere with the insurance carrier.

"I will need a statement from you to the effect that you are not in the military service of the United States or her allies.

"You should forward this Summons and Complaint thereto attached to the insurance carrier upon receipt thereof.

"If you have any questions to ask, please communicate with me." (Italics ours)

There is no record, and no evidence, of any attempt on the part of defendant to bring the contents of this letter to the secretary of state, to the attention of plaintiff.

Subsequently, and on November 29, 1946, a document designated an affidavit, but in fact only a verified statement, was subscribed and sworn to by Fodor and filed in the district court December 13, 1946, in which is found the statement, "and that the defendant above named *is* a non-resident, as will more fully appear from paragraph 1 of the complaint." Other than these references, there was no record of any attempt by Fodor to establish Carlson's nonresidence. The uncontradicted affidavits of Kenneth M. Wormwood and plaintiff definitely and unqualifiedly established plaintiff's residence in the state of Colorado from July 18, 1944, to May 28, 1945. The court must have found from this record that Carlson was a nonresident of Colorado on December 4,

1944, otherwise it would have been obligatory upon it to have granted the motion to quash.

In this state of the record, with no conflicting evidence, or disputed facts, we are called upon to determine whether plaintiff was a resident of the state of Colorado or a nonresident thereof.

In *Lyons v. Eagan,* 110 Colo. 227, 132 P. (2d) 774, we quoted with approval from Rapaljae & Lawrence's Dictionary the following: "The distinction between mere residence and domicile must be borne in mind. *The former is used in law to denote that a person dwells in a given place;* the latter is the legal home of a person, or that place where the law presumes that he has the intention of permanently residing although he may be absent from it." (Italics ours)

It has been held that one becomes a resident in the state when there is a personal presence at some place of abode with no present intention of definite and early removal therefrom and with a purpose and intent to remain for an undertermined period, not infrequently but not necessarily combined with a design to stay permanently. *Jenkins v. North Shore Dye House, Inc.,* 277 Mass. 440, 178 N.E. 644.

It is said that residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place coupled with an intention to make it one's permanent home. *Uslan v. Woronoff,* 18 N.Y.S. (2d) 222.

The term "nonresident" as used in our statutes should be so construed as to make it consistent with the purpose of the act. It is obvious that the legislature intended to obviate the difficulty presented in effecting service of process in the usual and ordinary way within the state of Colorado on nonresidents, who were temporarily within the state, and who, while here, become involved in an auto accident on our public highways. In the instant case no such difficulty presented itself for plaintiff was actually living and residing in Leadville, Colo-

rado, with his family for a period of more than five months after the accident, and there is nothing in the record disclosing any reason why service could not have been effectuated during this time. Until May 28, 1945, plaintiff was engaged in pastoral work at Leadville, Colorado, and we take judicial notice of the fact that often this work is not permanent. Neither is there in the record anything to show that plaintiff had a permanent resident, a home, or place of abode other than in Leadville, Colorado. If it should be held here that simply because the automobile driven by plaintiff bore an Illinois liscense rather than a Colorado license we should be obliged to hold the licensee to be a nonresident, we would be adopting an artificial, strained, and unwarranted construction of the term "nonresident." *Suit v. Shailer*, 18 F. Supp. 568.

The motion to quash, challenged the court's jurisdiction, and, consequently, the burden of proof in the district court was on Fodor to establish by competent evidence all the facts essential to the court's jurisdiction. One of these essential facts in the instant case was the nonresidence of plaintiff here at the time of the accident on December 4, 1944. *Welsh v. Ruopp*, 228 Ia. 70, 289 N.W. 760; *Jermaine v. Graf*, 225 Ia. 1063, 283 N.W. 428; *Red Top Cab & Baggage Co. v. Holt*, 154 Fla. 77, 16 So. (2d) 649; *Mayer v. Wright*, 234 Ia. 1158, 15 N.W. (2d) 268; *Suit v. Shailer*, 18 F. Supp. 568; *Donnelly v. Carpenter*, 55 Ohio App. 463, 9 N.E. (2d) 888.

Defendant states: "He had no alternative in view of a statute requiring registration by residents and the operation by Carlson in violation of the statute but to resort to service as a nonresident upon the secretary of state." Under our determination Fodor is in no better or worse position than he would have been had the damage to his person and property been occasioned by a collision with a motor vehicle operated by a resident of the state of Colorado who has complied with all statutes governing the operation of motor vehicles on the

public highways, but subsequent to the accident departed therefrom with a fixed intention of establishing a domicile in another jurisdiction. Defendant states that it is inconceivable that Carlson intended to commit a misdemeanor by driving his automobile with a foreign license. A nonresident who is at least sixteen years of age and has in his. immediate possession a valid operator's license issued to him in his own state may operate an automobile in Colorado without violating any statute. '35 C.S.A., c. 16, §123. Under this section a person licensed to drive by another state is treated in Colorado as one sufficiently certified to be competent and, consequently, the public is protected against incompetent operators. When one who is formerly a nonresident becomes a resident of this state, he is required to register under the provisions of section 106, chapter 16, '35 C.S.A. However, the requirements of this section relate to revenue rather than safety, and a violation of its terms by failing to register the motor vehicle does not confer any additional rights upon one who is damaged by its operation unless there is some causal connection between the law violation and the injury of which complaint is made. *La Junta v. Dudley,* 82 Colo. 354, 260 Pac. 96; 54 A.L.R. 374, et seq.

In the instant case, according to the record, there was neither conflicting evidence nor disputed facts. As we have shown, affiant, in the so-called affidavit which was filed in the district court on December 13, 1946, states: "That the defendant [Carlson] is a nonresident, as will more fully appear from Paragraph 1 of the complaint." By reference to said paragraph 1 we find that plaintiff was driving an automobile bearing an Illinois license. Whether he was a Colorado resident on December 13, 1946, when the so-called affidavit · was filed, is wholly immaterial to any issue in the case. The question is, was he a resident or nonresident of the state of Colorado on December 4, 1944, and the burden of establishing nonresidence on that date was upon Fodor.

According to the ordinary and usual meaning of the language used by defendant, we cannot escape the conclusion that the allegations of the complaint and the statements in the so-called affidavit are wholly insufficient to establish that on December 4, 1944, plaintiff here was a nonresident. Counter to the showing in the record made by Fodor in the district court, we have the definite, positive and unequivocal sworn statements of Wormwood and Carlson, as well as the letterhead of the church, to establish that on December 4, 1944, and for some time prior and subsequent thereto, Carlson was the resident pastor of a church in Leadville, Colorado. As we have said, there was neither conflicting evidence nor disputed facts before the court in connection with the hearing on the motion to quash; consequently the district court's finding is not binding on us. The action of the district court in denying Carlson's motion to quash was arbitrary and there was an entire absence of evidence to support it. The record considered, Carlson was not a nonresident of the state of Colorado on December 4, 1944, but a resident thereof. He was, therefore, not subject to the substituted service of process provided by said section 48 (1), and the court had no jurisdiction to entertain Fodor's action.

2. Assuming that at the time of the accident, December 4, 1944, plaintiff was a nonresident, nevertheless the court acquired no jurisdiction to proceed by substituted service.

By reference to section 48 (1), supra, hereinbefore set forth, it will be observed that when one seeks to recover a judgment in personam against a nonresident who has damaged him or his property while operating a motor vehicle on the public highways in this state, substituted service of process is provided by which courts acquire jurisdiction of the nonresident defendant. In order to acquire jurisdiction under the provisions of this section one must serve the process on the secretary of state by leaving a copy of the same, together with a fee of two

dollars, with him or in his office, and the statute provides: "Such service shall be sufficient service upon such nonresident defendant ·who has hereunder appointed the secretary of state his or its true and lawful attorney therefor; provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff to the defendant, and the defendant's return receipt * * * and the plaintiff's affidavit of compliance herewith are filed with the papers in the case on or before the return day of the process, or within such further time as the court may allow." The record here considered, there is a complete absence of notice to plaintiff of service upon the secretary. of state as "his true and lawful attorney." Even considering that the verified statement is an affidavit, it was not filed until almost a year after the service of process on the secretary of state, and the record fails to disclose that further time within which to file the affidavit of compliance by defendant was granted by the court. So far as we are advised or can learn, it is universally held that statutes, such as section 48 (1), supra, providing for substituted service, are in derogation of the common law and must be strictly construed and followed before jurisdiction of the person can attach thereunder; and, as we have hereinbefore determined, the burden of establishing jurisdiction is upon the plaintiff. *Damaskus v. McCarty-Johnson Co.*, 88 Colo. 279, 295 Pac. 490; *Eckman v. Grear*, 14 N.J. Misc. 807, 187 Atl. 556; *Donnelly v. Carpenter*, 55 Ohio App. 463, 9 N.E. (2d) 888; *Brown v. Cleveland Tractor Co.*, 265 Mich. 475, 251 N.W. 557; *Haughey v. Mineola Garage, Inc.*, 20 N.Y.S. (2d) 857; *Morrow v. Asher*, 55 F. (2d) 365; *Wood v. White*, 97 F. (2d) 646; *Commonwealth v. Maryland Casualty Co.*, 112 F. (2d) 352; 9 Blashfield Encyclopedia of Automobile Law and Practice, p. 442, §5914; 50 Am. Jur., p. 421, §397; 59 C.J., p. 1123, §665.

No notice of service upon the secretary of state having been sent by registered mail by the defendant to the

plaintiff; no affidavit of compliance having been filed on or before the return day of the process; and no allowance of further time appearing, we hold that the defendant utterly failed to comply with the provisions of our statute so as to give the court jurisdiction of plaintiff here by substituted or other service.

3. Under the provisions of Rule 12 (b), R.C.P. Colo., one of the specific subjects therein set forth is, "(2) Lack of Jurisdiction over the Person." The defense of lack of jurisdiction over the person, together with many other defenses, may, as the section provides, at the option of the pleader "be made by motion." In the present case the pleader exercised his option and raised the defense by a motion to quash and did not seek to avail himself of the right to include in his motion other defenses. What, if any, right plaintiff has waived respecting other defenses specified in section 12 (b), supra, is not now before us, and upon the question of waiver no opinion is expressed. Under the factual situation here, the motion to quash was a proper method of raising the question of lack of jurisdiction over the person of plaintiff.

4. We take cognizance of the provisions of Rule 116 of our Rules of Civil Procedure, and the limitations thereof. We have held in the action here involved that the court was proceeding without jurisdiction, and, the record considered, it is apparent that if we now hold otherwise, we would be under the duty, in event defendant here was successful in his action in the court below, of reversing the judgment if presented here by writ of error. It is the author's opinion that no question of greater "public importance" can arise than one in which a court is proceeding without jurisdiction of the person or subject matter. In this opinion other members of the court may not concur. However, where it is apparent that under the circumstances here no judgment in favor of the defendant in the court below could properly be affirmed, we have determined that under circumstances

in line with the particular factual situation here presented, an order in the nature of a writ of prohibition should be entertained.

Let the writ be made permanent.