2012 COA 140

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, a Minnesota corporation, as subrogee of James H. Hines, Jr., Plaintiff–Appellee,**

v.

**Roger KORNEGAY, Defendant–Appellant.**

**No. 11CA2248.**

Colorado Court of Appeals, Div. III.

Aug. 16, 2012.

§ 24–51–1105, C.R.S.2011.

Wheeler Trigg O'Donnell LLP, Habib Nasrullah, Joel S. Neckers, Denver, Colorado, for Plaintiff–Appellee.

Torbet & Tuft, LLC, David G. McConkie, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by Judge VOGT.*

¶ 1 Roger Kornegay appeals three trial court orders sustaining a prejudgment attachment obtained by Old Republic National Title Insurance Company in connection with its pending civil action against him. We affirm.

## I.  Background

¶ 2 Old Republic, a title insurance company, paid its insured $250,000 following the insured's purchase of property from Kornegay that Kornegay did not in fact own. Old Republic then sued Kornegay, alleging that its losses were the result of a fraud scheme he had perpetrated. Along with its complaint, Old Republic filed an ex parte motion for a prejudgment writ of attachment pursuant to C.R.C.P. 102.

¶ 3 In a supporting affidavit, Old Republic's investigator, Doug Pollock, averred that Kornegay had perpetrated similar fraud schemes against other victims; that he used funds generated by those schemes to purchase tax liens in Colorado and elsewhere, using various aliases and shell companies; that he then collected, and deposited into various bank accounts, money from the redemption of the tax lien certificates, in an effort to launder the proceeds of his fraud; and that, although Kornegay was incarcerated, his wife had a power of attorney to control and dispose of his assets.

¶ 4 Alleging that there was "a real threat that [Kornegay] or individuals he is close to will further transfer or hide his assets," thereby rendering execution unavailing in the event of a judgment against him, Old Republic sought a writ of attachment directing the sheriff to attach Kornegay's property pending final judgment. The trial court granted

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

the motion and issued the writ without requiring Old Republic to post a bond.

¶ 5 Old Republic served the writ, along with a writ of continuing garnishment in aid of attachment, on four banks, several Colorado county treasurers, and the clerk and recorder of El Paso County, where Kornegay owned real property. Kornegay, who was incarcerated in Nebraska, was served with copies of the writs and of the subsequently issued notice of levy.

¶ 6 Through counsel, Kornegay moved to dismiss and discharge the attachment and quash the garnishment. He also filed a traverse, a counterclaim for wrongful attachment, and a notice of a claimed homestead exemption. In three orders entered the same day, the trial court denied Kornegay's motions and dismissed his wrongful attachment counterclaim, thereby sustaining the attachment. Kornegay filed this appeal pursuant to C.R.C.P. 102(y) ("Any order by which an attachment is released or sustained is a final judgment."). The underlying civil action remains pending.

## II. Issues on Appeal

¶ 7 On appeal, Kornegay does not challenge the sufficiency of the Pollock affidavit to establish the grounds for attachment under C.R.C.P. 102(c). Rather, he argues, as he did in the trial court, that the attachment was wrongful because (1) Old Republic is not a Colorado resident and thus cannot avail itself of the remedy of prejudgment attachment; (2) the procedural requirements of C.R.C.P. 102(d), (h), (i), and (n) were not met; (3) the trial court should not have sustained the attachment without addressing his homestead exemption claim; and (4) the trial court erred in dismissing his counterclaim for wrongful attachment. We find no grounds for reversal.

¶ 8 In assessing Kornegay's claims, we are mindful that prejudgment attachments are in derogation of the common law, and that rules authorizing them are strictly construed. *See Jayne v. Peck*, 155 Colo. 513, 515, 395 P.2d 603, 604 (1964).

¶ 9 A trial court's interpretation of a rule of civil procedure is a question of law that we review de novo. *City & County of Broomfield v. Farmers Reservoir & Irrigation Co.*, 239 P.3d 1270, 1275 (Colo.2010).

### A. Old Republic's Right to Prejudgment Attachment

¶ 10 Although Old Republic is registered with the Colorado Secretary of State to conduct business in Colorado and has three offices here, its principal place of business is in its state of incorporation, Minnesota. Under C.R.C.P. 102(a) and (b), prejudgment attachment is available in an action on contract or "in an action to recover damages for tort committed against the person or property of a resident of this state." Kornegay does not dispute that Old Republic has the right to sue him in Colorado, but he contends that Old Republic may not, in that action, avail itself of the remedy of prejudgment attachment because it is not a resident of Colorado. We disagree.

¶ 11 Colorado courts have not addressed whether a foreign corporation authorized to conduct business in Colorado and having offices here may be considered a "resident of this state" for purposes of C.R.C.P. 102.[1]

¶ 12 In deciding whether Old Republic is entitled to the prejudgment attachment remedy provided in C.R.C.P. 102, we begin with the plain language of the rule. *See Farmers*

---

1. In *Aero Spray, Inc. v. Ace Flying Service, Inc.*, 139 Colo. 249, 253–54, 338 P.2d 275, 277 (1959), the supreme court held that a foreign corporation not qualified to do business in Colorado could make use of the remedies of attachment and garnishment. However, *Aero Spray* was a contract action, and the "resident of this state" limiting language in C.R.C.P. 102(a) applies to torts, not to contract actions. Conversely, in *Cook v. Hager*, 3 Colo. 386, 388–89 (1877), the supreme court held that, for purposes of determining the residence of a mortgagor of personal

property, a foreign corporation could not be deemed to reside in the Colorado county where one of its offices was located. However, the *Cook* court based its analysis on the law of corporate "domicile"; and we are not persuaded that, in view of the supreme court's subsequent cases distinguishing domicile from residence (discussed below), the court would reach the same conclusion today. In these circumstances, we conclude that the issue raised by Kornegay has not been resolved in Colorado.

*Reservoir & Irrigation Co.,* 239 P.3d at 1275 ("We interpret a rule of procedure according to its commonly understood and accepted meaning. Words and provisions should not be added to a rule, and the inclusion of certain terms in a rule implies the exclusion of others." (citation omitted)). In doing so, we find it significant that the rule refers to "resident," rather than to "domiciliary," "citizen," or other similar terms.

¶ 13 Colorado cases have distinguished "residence" from "citizenship," "domicile," or "legal residence." In *Carlson v. District Court,* 116 Colo. 330, 338–39, 180 P.2d 525, 529–30 (1947), the supreme court held that a pastor temporarily serving a church in Leadville was a resident of Colorado for purposes of service of process on him. The court reasoned that there was a difference between residence—which requires only "personal presence at some place of abode with no present intention of definite and early removal therefrom and with a purpose and intent to remain for an undetermined period"—and domicile, which refers to "the legal home of a person, or that place where the law presumes that he has the intention of permanently residing although he may be absent from it." *Id.* at 338, 180 P.2d at 529–30; *see also Gordon v. Blackburn,* 618 P.2d 668, 671 (Colo.1980) (distinguishing "residence" from "legal residence" or "domicile" in election context).

¶ 14 Recently, in *Munoz–Hoyos v. de Cortez,* 207 P.3d 951, 952 (Colo.App.2009), a division of this court held that a plaintiff's status as a non-citizen of the United States did not preclude her from being considered a "resident of this state" for purposes of the cost bond statute, section 13–16–101, C.R.S.2011. The division cited case law establishing that, "[i]n Colorado, whether a person is a resident of the state is determined by that person's physical presence and intent to remain," *id.* at 953, and stated that it had "found no Colorado authority suggesting that, in enacting the cost bond statute, the General Assembly meant that the term 'resident' be determined by something other than these uniformly accepted criteria." *Id.*

¶ 15 These cases address the "residence" inquiry for individuals, not corporations. Neither they nor any other Colorado cases of which we are aware have discussed the distinction between residence, on the one hand, and domicile, citizenship, or similar terms, on the other hand, in the corporate context. We therefore look to authority from other jurisdictions to inform our inquiry.

¶ 16 Although a corporation is generally considered to be domiciled in, and a citizen of, its place of incorporation, it may for some purposes be considered a resident of more than one state. *American Employers' Ins. Co. v. Elf Atochem North America, Inc.,* 157 N.J. 580, 725 A.2d 1093, 1098 (1999) (" 'Residence' is a word with many meanings. For example, a person may have only one domicile, but a person may have more than one residence. Although a corporation is usually thought to be domiciled in its place of incorporation, depending on the context, it may be considered a resident of several states.").

¶ 17 In varying contexts, courts have recognized that a corporation can be a resident of a particular jurisdiction even if it is not incorporated in, and does not have its principal place of business in, that jurisdiction. *See Int'l Milling Co. v. Columbia Transp. Co.,* 292 U.S. 511, 519, 54 S.Ct. 797, 78 L.Ed. 1396 (1934) (no unreasonable burden on interstate commerce to sue Delaware corporation in Minnesota, where it was doing business; although corporation's "domicile in law" was for many purposes the state of its creation, it was "[i]n a very real and practical sense" a resident of Minnesota); *Hordis Bros., Inc. v. Sentinel Holdings, Inc.,* 562 So.2d 715, 717 (Fla.Dist.Ct.App.1990) (prejudgment attachment not available under "nonresident" portion of attachment statute where debtor corporation, although neither incorporated in, nor having its principal place of business in, Florida, "resided" in Florida by virtue of its operation of a manufacturing plant there); *Reimers v. Honeywell, Inc.,* 457 N.W.2d 336, 338 (Iowa 1990) (Delaware corporation with principal place of business in Minnesota, but authorized to do business in Iowa and having an office there, was an Iowa resident for venue purposes); *State ex rel. Cartwright v. Hillcrest Investments, Ltd.,* 630 P.2d 1253, 1259 (Okla.1981) (Canadian

corporation licensed to do business in Oklahoma was a resident of Oklahoma for purposes of restrictions on land ownership; collecting cases); *Great Lakes Dredge & Dock Co. v. Norberg*, 117 R.I. 600, 369 A.2d 1101, 1107 (1977) (corporation incorporated in New Jersey but doing substantial business in Rhode Island was not a "nonresident" of Rhode Island for purposes of use tax exemption; collecting cases); *see also 8 Fletcher Cyclopedia of the Law of Corporations* § 4029 (2012) (for jurisdictional purposes, "[a]lthough a corporation is usually thought to be domiciled in its place of incorporation, it may be considered a resident of several states").

¶ 18 In arguing that Old Republic cannot be deemed a resident of Colorado for purposes of prejudgment attachment, Kornegay cites the Colorado Supreme Court's definitions of "domicile" and "legal residence" in *Carlson* and *Gordon*, discussed above, and he quotes definitions of corporate domicile from *Black's Law Dictionary*. However, as noted, residence is not synonymous with domicile or with "legal residence." Indeed, in defining "residence," *Black's* contrasts the term with "domicile" and states: "A person thus may have more than one residence at a time but only one domicile." *Black's Law Dictionary* 1423 (9th ed. 2009).

¶ 19 Consistent with the cases cited above, which we find persuasive, we conclude that Old Republic is a "resident of this state" for purposes of C.R.C.P. 102. The record shows that Old Republic is authorized to, and does, conduct business in Colorado, and that it has three offices here. These facts satisfy the test for residency under *Carlson*—presence, and "no present intention of definite and early removal," 116 Colo. at 338, 180 P.2d at 529–30—and they are consistent with the circumstances relied on in the cases discussed above as supporting a conclusion that a foreign corporation should be deemed a resident. Further, under section 7–90–805(2), C.R.S.2011, "[a] foreign entity that has authority to transact business or conduct activities in this state has the same rights and privileges as … a functionally equivalent domestic entity." Kornegay cites no policy reasons why, notwithstanding this statute, Old Republic should be denied the right to obtain a prejudgment writ of attachment in an action that it undisputedly has a right to bring.

¶ 20 In these circumstances, we decline to read the "resident of this state" limitation in C.R.C.P. 102 to mean "domiciliary" or "legal resident" or "citizen" of this state. *See Farmers Reservoir & Irrigation Co.*, 239 P.3d at 1275. Rather, we conclude that, for purposes of the prejudgment attachment remedy set forth in C.R.C.P. 102, Old Republic is a resident of Colorado and thus may avail itself of that remedy.

## B. Other Issues

¶ 21 Kornegay's additional arguments for reversal are unavailing for the following reasons.

### 1. Compliance with C.R.C.P. 102(h) and (i).

The relevant version of C.R.C.P. 102, in effect until January 1, 2012, included the following provisions regarding execution and return of a writ of attachment:

(h) Execution of writ. The sheriff to whom the writ is directed and delivered shall execute the same without delay as follows:

(1) Real property standing upon the records of the county in the name of the defendant shall be attached by filing a copy of the writ, together with a description of the property attached, with the recorder of the county.

(2) Real property, or any interest therein belonging to the defendant, and held by any person, or standing upon the records of the county in the name of any other person but belonging to the defendant, shall be attached by leaving with such person or his agent, if either be found in the county, a copy of the writ and a notice that such real property (giving a description thereof), and any interest therein belonging to the defendant, are attached pursuant to such writ, and filing a copy of such writ and notice with the recorder of the county.

(3) Personal property shall be attached by taking it into custody.

(i) Return of writ. The sheriff shall return the writ of attachment within twenty [now twenty-one] days after its receipt, with a certificate of his proceedings endorsed thereon, or attached thereto, making a full inventory of the property attached as a part of his return upon the writ.

¶ 22 Kornegay contends that Old Republic failed to comply with these provisions because the sheriff did not take physical custody of the tax lien certificates in accordance with C.R.C.P. 102(h)(3) and did not return the writ with the prescribed attachments. However, the record includes returns of service showing that the writ, with accompanying documentation, and the subsequent notice of levy detailing the assets that were being "held or taken," were served on Kornegay by a private process server. Use of a private process server, instead of the sheriff, to serve the writ on a defendant incarcerated in another state complies with the requirements of the rule. *See Crow-Watson Properties, Inc. v. Carrier,* 719 P.2d 365, 368 (Colo.App.1986). Further, the notice of levy and writs of garnishment served on Kornegay and filed with the court detail the property being attached, and Kornegay does not contend that he was unaware of what property was subject to the attachment. Thus, there was no violation of C.R.C.P. 102(i).

¶ 23 As for C.R.C.P. 102(h), the tax liens in this case were security interests in real property, *see Meyer v. Haskett,* 251 P.3d 1287, 1290–91 (Colo.App.2010); *Israel v. Rifle Econolodge Joint Venture,* 793 P.2d 658, 660 (Colo.App.1990), and the procedure employed here—serving writs of garnishment in aid of attachment on the treasurers of the counties where the property was located—satisfied the requirements of C.R.C.P. 102(h)(2). *Cf. Moreland v. Alpert,* 124 P.3d 896, 902–03 (Colo.App.2005) (attempted at-tachment of corporate stock certificates was ineffective where sheriff neither took certificates into his custody nor directed stock agent to hold certificates so as to place them in court custody; but writ of garnishment served by intervenors effectively brought certificates within court's jurisdiction).[2]

**2. Compliance with C.R.C.P. 102(d).**

¶ 24 C.R.C.P. 102(d) states that, before issuance of a writ of attachment,

the plaintiff shall furnish a bond that complies with the requirements of C.R.C.P. 121, § 1–23, in an amount set by the court in its discretion, not exceeding double the amount claimed, to the effect that if the defendant recover judgment, or if the court shall finally decide that the plaintiff was not entitled to an attachment, the plaintiff will pay all costs that may be awarded to the defendant, and all damages defendant may sustain by reason of the wrongful suing out of the attachment.

¶ 25 In its initial motion, Old Republic explained why it believed a bond was unnecessary, but it offered to post a bond in a nominal amount if required to do so. The trial court stated that bond would be waived. Kornegay contends that this was error because the bond requirement of C.R.C.P. 102(d) is not waivable. Old Republic responds that the court effectively set the bond amount at zero, and that that determination was an appropriate exercise of the court's discretion given the resources available to Old Republic to satisfy any damages or costs Kornegay might incur if the attachment was wrongful. We agree with Old Republic.

¶ 26 Although C.R.C.P. 102(d) states that a plaintiff seeking prejudgment attachment shall furnish a bond, the rule (like C.R.C.P. 121 § 1–23, which it references) gives the court discretion to set the amount of the bond. Rule 102(d) limits that discretion by setting a maximum amount for the bond ("not exceeding double the amount claimed"),

---

**2.** The responses to the writs from the various county treasurers show that the procedure employed here was appropriate to give notice of what was being attached and bring the property within the court's jurisdiction. For example, one county treasurer identified two tax liens owned by Kornegay; stated that no amounts were owed to Kornegay because neither lien had been redeemed; and continued: "In the case of a redemption by a property owner, we have flagged these files for the redemption amount to be held until further order of the Court."

but it does not set a minimum amount. Thus, the rule gives the trial court discretion to set the amount at zero if the court determines that circumstances do not require a bond in a higher amount.

¶ 27 Here, given the compelling grounds for prejudgment attachment set forth in Old Republic's affidavit and the undisputed fact that Old Republic could satisfy any award of damages or costs to Kornegay if the attachment were wrongful, we cannot say that the court abused its discretion in declining to order Old Republic to post a bond. We note that, in the analogous context of a procedural rule mandating a bond upon issuance of a preliminary injunction, courts have recognized that the bond amount may be set at zero if there is no evidence that the enjoined party will be unable to collect damages in the event of a wrongful injunction. *See Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782–83 (10th Cir.1964) (no abuse of discretion to grant preliminary injunction without requiring bond where plaintiff was "a corporation with considerable assets" that was "able to respond in damages if [defendant] does suffer damages by reason of the injunction"); *Asa v. Pictometry Int'l Corp.*, 757 F.Supp.2d 238, 247 (W.D.N.Y.2010) (no bond required where, among other things, "both parties appear to be fully solvent, and there is no indication . . . that either of them would be unable to satisfy an award of damages if it is later determined that the other party was wrongfully enjoined"); *Radio One, Inc. v. Wooten*, 452 F.Supp.2d 754, 760 (E.D.Mich.2006) (declining to require bond where defendant, a large broadcasting company with numerous radio stations, did "not pose a collection risk"). Although it would have been preferable for the court to state that the bond amount was zero rather than that bond was "waived," its failure to do so does not require reversal.

3. Compliance with C.R.C.P. 102(n).

¶ 28 C.R. C.P. 102(n)(1) states, in relevant part:

The defendant may, at any time before trial, by affidavit, traverse and put in issue the matters alleged in the affidavit, testimony, or other evidence upon which the attachment is based and if the plaintiff shall establish the reasonable probability that any one of the causes alleged in the affidavit exists, said attachment shall be sustained, otherwise the same shall be dissolved. A hearing on the defendant's traverse shall be held within 7 days from the filing of the traverse and upon no less than two business days' notice to the plaintiff.

¶ 29 Kornegay contends the trial court violated this provision by failing to hold a hearing on his traverse. We conclude that, because Kornegay did not file an effective traverse, no hearing was required.

¶ 30 C.R.C.P. 102(n) permits a defendant to "traverse and put in issue the matters alleged in [plaintiff's] affidavit," but it requires that the defendant do so by affidavit. Kornegay did not file an affidavit. Rather, he filed a "verified traverse"—verified by his counsel—that (1) raised the alleged procedural violations discussed above, and (2) argued that Pollock's affidavit was insufficient because it used the term "believe" in several paragraphs and did not cite evidence showing either that Kornegay and his wife were about to remove property from Colorado or that his investment in tax certificates was intended to defraud or hinder creditors.

¶ 31 Old Republic argued in the trial court, as it does on appeal, that Kornegay's traverse was ineffective in that it was not supported by an affidavit. Kornegay responded that verification of the traverse by counsel was sufficient. We conclude that, even assuming there are circumstances in which verification can satisfy the requirement of an affidavit, Kornegay's verified traverse did not do so. A traverse of an affidavit supporting prejudgment attachment must be clear and specific. *Barbary v. Benz*, 169 Colo. 408, 412, 457 P.2d 389, 391 (1969). A mere denial that a defendant is about to transfer property fraudulently does not sufficiently put in issue the matters set forth in the plaintiff's affidavit. *Colorado Vanadium Corp. v. Western Colo. Power Co.*, 73 Colo. 24, 27–28, 213 P. 122, 123–24 (1923). Further, a traversing affidavit must be made "positively," by one with knowledge of the facts, and cannot be submitted on informa-

tion and belief by a corporate officer or attorney. *Id.* at 28, 213 P. at 124.

¶ 32 Because Kornegay's verified traverse did not satisfy the requirements for an effective traverse under C.R.C.P. 102(n)(1), it likewise did not invoke the hearing provision of that rule.

### 4. Kornegay's homestead exemption claim.

¶ 33 Kornegay claimed a homestead exemption pursuant to section 38–41–201, C.R.S.2011, for the Peyton, Colorado, real property that Old Republic sought to attach. Old Republic objected and submitted a second affidavit from its investigator, who stated that neither Kornegay nor his wife resided at the property. The trial court did not specifically address the homestead exemption claim in its orders. We conclude that the court implicitly rejected the claim by sustaining the attachment, and that, based on the record, rejection of the claim was not error.

¶ 34 Section 38–41–201(1), C.R.S.2011, states in relevant part:

> Every homestead in the state of Colorado shall be exempt from execution and attachment arising from any debt, contract, or civil obligation not exceeding in actual cash value in excess of any liens or encumbrances on the homesteaded property in existence at the time of any levy of execution thereon:
>
> (a) The sum of sixty thousand dollars if the homestead is occupied as a home by an owner thereof or an owner's family. . . .

¶ 35 By its terms, the homestead exemption applies only where the property is occupied as a home by the owner or the owner's family. *In re Estate of Dodge,* 685 P.2d 260, 264 (Colo.App.1984). If a claimant ceases to occupy the property, a presumption of abandonment arises. *Monte Vista Bank & Trust Co. v. Savage,* 75 Colo. 180, 183, 225 P. 219, 220 (1924). To rebut this presumption the claimant must show that the removal was temporary and made for a specific purpose and that he or she intended to reoccupy the premises. *Id.* However, "a vague intention to return perhaps at some future time

and reside there again" is insufficient to constitute such a showing. *Id.*

¶ 36 In his initial homestead exemption claim, Kornegay stated that he "claims a homestead exemption as to the real property at 6280 Murr Road, Peyton, Colorado." The claim did not state that he or his wife lived at the property, and Kornegay had stated in other pleadings that he was not a resident of Colorado. It was undisputed that, at the time he filed his claim, Kornegay was incarcerated in Nebraska and his wife was residing in that state.

¶ 37 After Old Republic filed its objection and supporting affidavit, Kornegay provided documentary evidence showing that he held title to the Peyton property, albeit under the name of "John Leslie d/b/a Tri–State Investments," and that he was responsible for payment of taxes on it. However, he provided no affidavit or evidence that he or his wife had occupied the property as a home. His response to Old Republic's objection stated only that he had "informed counsel of his intent to have his wife live in the Peyton property and that he would like to reside there with her upon his release from custody."

Even if there were evidence that Kornegay and his wife had previously occupied the property and were only temporarily residing elsewhere, Kornegay's stated "vague intention to return" was insufficient to establish his right to the claimed homestead exemption. See *Monte Vista Bank,* 75 Colo. at 182, 225 P. at 220 (on appeal, supreme court could independently consider evidence in record to decide whether claimant had established right to homestead exemption).

### 5. Wrongful attachment counterclaim.

¶ 38 Kornegay's counterclaim for wrongful attachment was dismissed by the trial court pursuant to C.R.C.P. 12(b)(5). The grounds on which Kornegay claimed the attachment was wrongful have been addressed above and rejected. It follows that the trial court did not err in dismissing the counterclaim on the basis that its allegations were unsupported by Colorado law. See *Western Innovations, Inc. v. Sonitrol Corp.,* 187 P.3d 1155, 1158 (Colo.App.2008) (a complaint may be dis-

missed for failure to state a claim if the substantive law does not support the claims asserted); *Nelson v. Nelson,* 31 Colo.App. 63, 65–66, 497 P.2d 1284, 1286 (1972) (same).

¶ 39 The orders are affirmed.

Judge ROY and Judge DAILEY concur.