COLORADO COURT OF APPEALS                    2016COA127

Court of Appeals No. 15CA0932
El Paso County District Court No. 14CV33003
Honorable Thomas L. Kennedy, Judge

Shane Grippin,

Plaintiff-Appellant,

v.

State Farm Mutual Automobile Insurance Company,

Defendant-Appellee.

JUDGEMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE LICHTENSTEIN
J. Jones and Dunn, JJ., concur

Announced September 8, 2016

Keating Wagner Polidori Free, P.C., Zachary C. Warzel, Denver, Colorado;
Rosenbaum & Wootton, P.C., Lee K. Rosenbaum, Richard E. Wootton, Colorado
Springs, Colorado, for Plaintiff-Appellant

Harris Karstaedt Jamison & Powers, P.C., Heather A. Salg, Tanja Heggins,
Englewood, Colorado, for Defendant-Appellee

¶ 1    Plaintiff Shane Grippin appeals the trial court's order granting summary judgment in favor of defendant State Farm Mutual Automobile Insurance Company (State Farm) on his claims for breach of contract, bad faith breach of insurance contract, and unreasonable delay or denial of payment of uninsured motorist/underinsured motorist (UM/UIM) benefits.  He contends, among other things, that State Farm's insurance policy definition of "resident relative," which requires a relative to "reside primarily" with the named insured to receive UM/UIM benefits, violates public policy because it provides coverage to a narrower class of persons than the UM/UIM statute, and is therefore void and unenforceable. We agree, and therefore we reverse the district court's order granting summary judgment and remand the case for further proceedings on Grippin's claims.

## I.    Background

¶ 2    Grippin was injured when a truck hit him while he was riding his motorcycle.  He sustained serious injuries and incurred over $400,000 in damages.  At the time the accident occurred, Grippin and his wife owned a home in Colorado Springs, where they lived

1

with their children.  However, Grippin (and his wife and children) also regularly lived with his grandparents at their house in Fort Morgan for approximately one week per month to help care for them.  He and his wife had their own room in the Fort Morgan house, kept personal belongings there, and Grippin did maintenance work around the house.

¶ 3    Although Grippin received the $25,000 liability limit from the GEICO policy insuring his motorcycle and the $25,000 liability limit from the truck driver's GEICO insurance policy, he sought additional coverage through the UM/UIM provisions of his family members' policies to cover his medical bills.  As pertinent here, these policies included the following four State Farm policies:[1]

- Policy #065, covering a 1997 Chevrolet pickup, issued to named insureds Lora Grippin (Grippin's mother)[2] and Patty J. Hall (Grippin's grandmother);

---

[1] Grippin was also paid under the following two policies, which are not at issue on appeal: (1) a Safeco Insurance Company policy issued to his wife covering a 2007 Dodge Durango for the UM/UIM policy limit of $250,000; and (2) a State Farm policy issued to him and his mother covering a 2000 Pontiac for the UM/UIM policy limit of $100,000.

[2] Grippin's mother resided at the Fort Morgan house at the time of the accident.

2

- Policy #253, covering a 1991 Chevrolet pickup, issued to named insureds James W. Hall (Grippin's grandfather) and Patty J. Hall;

- Policy #123, covering a 2004 Honda, issued to named insureds James W. and Patty J. Hall; and

- Policy #658, covering a 2006 Chevrolet Trailblazer, issued to named insureds James W. and Patty J. Hall.

¶ 4    Each policy defined the term "insured" as "you and resident relatives." The policies further defined a "resident relative" as

> a person, other than you, who resides
> primarily with the first person shown as a
> named insured on the Declarations Page and
> who is [] related to that named insured or is or
> her spouse by blood, marriage, or adoption,
> including an unmarried and unemancipated
> child of either who is away at school and
> otherwise maintains his or her primary
> residence with that named insured. . . ."

(Emphasis omitted.)

¶ 5    The policyholders also received "Auto Renewal" forms each year, which contained a list of "Other Household Drivers." Grippin was listed as an "Other Household Driver" on all four policies.

¶ 6    State Farm moved for summary judgment on the grounds that Grippin was not a "resident relative" of his grandparents under the

policies because he did not reside "primarily" at their home in Fort Morgan.

¶ 7 Grippin responded that State Farm's definition of "resident relative" violates public policy, and is therefore void, because the qualifier "primarily" dilutes, conditions, or limits Colorado's statutory definition of "resident relative." He alternatively argued that the insurance contracts were ambiguous because he was listed as an "Other Household Driver" on the Auto Renewal forms, and that he had a reasonable expectation of coverage based on those forms and a State Farm employee's assurance after the accident that he was covered by the policies. The trial court rejected Grippin's arguments and granted summary judgment in favor of State Farm.

II. Standard of Review and Principles of Interpretation

¶ 8 We review the grant of a motion for summary judgment de novo. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo. 1995). "Summary judgment is proper where a case presents no genuine issue of material fact and the law entitles one party to judgment in its favor." *Yellow Jacket Water Conservancy Dist. v. Livingston*, 2013 CO 73, ¶ 6.

¶ 9    "Insurance policies are subject to contract interpretation and are reviewed de novo, with the ultimate aim of effectuating the contracting parties' intentions."  *GEICO Cas. Co. v. Collins*, 2016 COA 30M, ¶ 18.  Whether an insurance policy provision violates public policy, and is therefore void and unenforceable, is also a question of law that we review de novo.  *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1045 (Colo. 2011).

¶ 10    Finally, statutory interpretation is a question of law that we review de novo.  *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099, 1102 (Colo. 2011).  Our primary goal is to give full effect to the General Assembly's intent.  *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92, 97 (Colo. 1995).  To do so, we interpret statutory terms in accordance with their plain and ordinary meaning.  *Id.*  "[W]e strive to interpret statutes in a manner that avoids rendering any provision superfluous."  *Colo. Ins. Guar. Ass'n v. Sunstate Equip. Co., LLC*, 2016 COA 64, ¶ 81 (quoting *Qwest Corp. v. Colo. Div. of Prop. Taxation*, 2013 CO 39, ¶ 16).

### III. Whether "Resides Primarily" Violates Public Policy

#### A. Relevant Law

¶ 11    Colorado law requires automobile insurance policies to provide UM/UIM coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from the owners or operators of uninsured motor vehicles," unless the named insured rejects the coverage in writing. § 10-4-609(1)(a), C.R.S. 2015. The UM/UIM coverage must be "coextensive with the class of insureds covered under the liability provision of the policy." *Aetna*, 906 P.2d at 98.

¶ 12    An insurance policy provision violates public policy and is therefore void and unenforceable if it attempts to "dilute, condition, or limit statutorily mandated coverage." *Bailey*, 255 P.3d at 1045 (citation omitted); *see Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 740 (10th Cir. 2009) (finding that UM/UIM provision that diluted, limited, or conditioned Colorado's statutorily mandated coverage was void and invalid as against public policy).

¶ 13    Colorado's automobile insurance statute defines an "insured" as "the named insured, relatives of the named insured who reside in the same household as the named insured, and any person using

6

the described motor vehicle with the permission of the named insured." § 10-4-601(5), C.R.S. 2015.

¶ 14    The statute further defines a "resident relative" as

> a person who, at the time of the accident, is related by blood, marriage, or adoption to the named insured or resident spouse and who resides in the named insured's household, even if temporarily living elsewhere, and any ward or foster child who usually resides with the named insured, even if temporarily living elsewhere.

§ 10-4-601(13).

¶ 15    "In the context of automobile insurance exclusions, residence is determined on a case-by-case basis using factors such as intent and relative permanence." *Potter v. State Farm Mut. Auto. Ins. Co.*, 996 P.2d 781, 783 (Colo. App. 2000). When making that determination, courts consider factors such as the subjective or declared intent of the individual, the formality or informality of the relationship between the individual and members of the household, the existence of another place of lodging, and the relative permanence or transient nature of the individual's residence in the household. *Iowa Nat'l Mut. Ins. Co. v. Boatright*, 33 Colo. App. 124, 127, 516 P.2d 439, 440 (1973). No single factor is determinative;

rather, they should all be considered "in light of the basic consideration of whether the parties to the insurance contract intended that coverage would extend to the alleged insured." *Id.*

## B. Discussion

¶ 16 Grippin contends that State Farm's definition of "resident relative" violates public policy because it restricts the class of individuals insured to a relative who resides *primarily* with the first person shown as the named insured on the declarations page; whereas the statutory definition of a "resident relative" includes a broader class of relatives "who reside[] in the named insured's household." He argues that a person can have multiple residences under Colorado law and that the statute's plain language does not restrict the definition of "resident relative" to a single, "primary" residence. We agree.

¶ 17 The General Assembly did not expressly modify or define the word "reside" to restrict the class of insureds only to relatives who reside "primarily" with the named insured. *See* § 10-4-601(13).

¶ 18 Colorado law contemplates that a person can "reside" in more than one place. "[R]esidence denotes a place where a person dwells. It 'simply requires bodily presence as an inhabitant in a given

8

place.'" *Potter*, 996 P.2d at 783 (quoting *Carlson v. Dist. Court*, 116 Colo. 330, 338, 180 P.2d 525, 530 (1947)).  Indeed, the definition of "residence" in *Black's Law Dictionary* explains that a person can have more than one residence:

> *Residence* usu[ally] just means bodily presence as an inhabitant in a given place; *domicile* usu[ally] requires bodily presence plus an intention to make the place one's home.  A person thus may have more than one residence at a time but only one domicile.

*Black's Law Dictionary* 1502 (10th ed. 2014); *see also Old Republic Nat'l Title Ins. Co. v. Kornegay*, 2012 COA 140, ¶ 18 (noting that "residence is not synonymous with domicile or with 'legal residence'" and citing *Black's* for the proposition that a person can have more than one residence at a time); *Potter*, 996 P.2d at 783 (contrasting "domicile" with "residence" when interpreting the ambiguous phrase "living with" in an insurance policy).

¶ 19     Furthermore, another division of this court has noted that a child of divorced or separated parents "may reside in more than one household if he or she spends substantial time in each under joint custody or visitation arrangements." *Midwest Mut. Ins. Co. v. Titus*, 849 P.2d 908, 910 (Colo. App. 1993).  Accordingly, a relative can

9

potentially have multiple residences so long as "all relevant circumstances . . . reveal 'some intended presence in the insured's home.'" *Id.* (quoting *Wheeler v. Allstate Ins. Co.*, 814 P.2d 9, 10 (Colo. App. 1991)).

¶ 20    But State Farm argues that the phrases "at the time of the accident" and "even if temporarily living elsewhere" in the statutory definition imply that the General Assembly intended to limit its application to a relative's "primary" residence, and that to read the statute otherwise would render the term "temporarily" superfluous. We are not persuaded.

¶ 21    To begin, a person who has multiple residences may be temporarily living elsewhere (other than the named insured's household) at the time of the accident. The phrase "at the time of the accident," simply limits the definition to the place (or places) where the relative resides at a particular point in time. And the phrase "even if temporarily living elsewhere" clarifies that at that particular point in time, a relative who otherwise qualifies as a "resident" of an insured's household will not be excluded simply because he or she was temporarily living somewhere else at the time the accident occurred. We therefore do not perceive an intent

10

to limit the definition to a single "primary" residence from the General Assembly's use of these phrases.

¶ 22     Nor does our interpretation render the phrase "even if temporarily living elsewhere" superfluous. This phrase clarifies the phrase "at the time of the accident," allowing a person to qualify as a "resident relative" even if at the time the accident occurred he or she was temporarily living somewhere else. The fact that a person can have more than one residence does not change this meaning. For example, the phrase "even if temporarily living elsewhere" allows a child who resides in the separate households of divorced parents to be covered by the statute even if he or she is temporarily living away on a study abroad program, at an overnight summer camp, or at a boarding school or college when the accident happens. In this light, interpreting the statute to allow a person to have more than one residence does not read the phrase "even if temporarily living elsewhere" out of the statute.

¶ 23     State Farm's definition of "resident relative" therefore narrows the statutorily defined class of insureds because relatives who "reside" with the named insured (as determined by the factors in *Boatright*, 33 Colo. App. at 127, 516 P.2d at 440) but do not reside

"primarily" with the named insured are included under the statute, but not included under State Farm's policy. *Compare Titus*, 849 P.2d at 910 ("[C]hild . . . may reside in more than one household if he or she spends substantial time in each under joint custody or visitation arrangements."), *with Lukk v. State Farm Mut. Auto. Ins. Co.*, C.A. N12C–06–161 PRW, 2014 WL 1891000, at *6 (Del. Super. Ct. Mar. 31, 2014) (unpublished opinion) (son, who had a designated bedroom in both his mother's and his father's homes; kept furniture, clothing, and personal effects at each place; and split his time evenly between them, could reside "primarily" with only one of them). It therefore impermissibly limits statutorily mandated coverage and violates public policy.

¶ 24    State Farm nonetheless points to *Wheeler*, 814 P.2d 9, to suggest that, because the statute does not define the words "reside" and "resident," it is free to adopt its own internal definition of those terms. While it is true that the No-Fault Act, which was in place at the time *Wheeler* was decided, did not define "reside" or "resident," it also did not define "resident relative." The current statute, however, defines "resident relative." *See* § 10-4-601(13). And State

Farm's definition of "resident relative" dilutes, conditions, or limits that statutory definition, as discussed above.

¶ 25    State Farm's reliance on the Delaware superior court's decision in *Lukk*, which held that the "resides primarily" provision did not violate public policy, is similarly misplaced. *Lukk* is inapposite because, unlike Colorado, Delaware does not statutorily define "insured" or "resident relative" to determine who is entitled to mandatory UM/UIM coverage. *See Lukk*, 2014 WL 1891000, at *3-4.

¶ 26    We conclude that State Farm's definition of "resident relative" improperly limits statutorily mandated coverage. The provision requiring a relative to reside "primarily" with the first person shown as the named insured therefore violates public policy and is void and unenforceable.

¶ 27    Accordingly, we reverse the district court's grant of summary judgment on those grounds and remand for further proceedings on Grippin's claims.[3]

---

[3] We note that the issue of whether Grippin qualifies as a "resident" of his grandparents' household under the *Boatright* factors was neither presented in State Farm's motion for summary judgment

13

IV.     Remaining Issues

¶ 28    Grippin contends that he is alternatively entitled to UM/UIM benefits because (1) the Auto Renewal forms create an ambiguity about the identity of the insureds covered under the policies and (2) the forms and post-accident statements by a State Farm employee gave him a reasonable expectation of coverage.  We disagree with his first contention and do not reach his second.

A.     Whether the Auto Renewal Forms Create An Ambiguity

¶ 29    Grippin argues that listing him as an "Other Household Driver" on the Auto Renewal forms associated with each policy creates an ambiguity as to the identities of the insureds, and that we should resolve any ambiguity in favor of coverage.

¶ 30    A term in an insurance policy is ambiguous "if it is susceptible on its face to more than one reasonable interpretation." *Am. Family Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶ 24 (quoting *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059-60 (Colo. 2005)).  "[A]n ambiguity must appear in the four corners of the document *before* extrinsic evidence can be considered." *Id.* at ¶ 26.  As a result,

nor addressed by the district court.  We therefore express no opinion on this issue.

14

"extrinsic evidence cannot create ambiguity" in a policy provision; instead, "it is an aid to ascertaining the intent of the parties once an ambiguity is found." *Id.*

¶ 31     Our supreme court's recent decision in *Hansen* is dispositive. The Auto Renewal forms at issue here, like the lienholder statements at issue in *Hansen*, are not part of the State Farm policies. Rather, the declarations pages of each policy state unambiguously that the named insureds are Lora Grippin, Patty J. Hall, and James W. Hall, respectively. These names do not include Grippin. *Compare id.* at ¶ 24 ("[T]here is no ambiguity with regard to the identity of the insureds 'DAVIS, WILLIAM & JOYCE.' Those names do not include Hansen."), *with D.C. Concrete Mgmt., Inc. v. Mid-Century Ins. Co.*, 39 P.3d 1205, 1208 (Colo. App. 2001) (policy listing insured as "Rafael Sanchez DC Concrete Management" was ambiguous because it was impossible to tell if there was one named insured or two).

¶ 32     But even if the Auto Renewal forms were part of the State Farm policies, the list of "Other Household Drivers" does not make the policies ambiguous. The list was prefaced by this language:

15

> In addition to the Principal Driver(s) and Assigned Drivers(s), your premium may be influenced by the drivers shown below and other individuals permitted to drive your vehicle. This list does not extend or expand coverage beyond that contained in this automobile policy. The drivers listed below are the drivers reported to us that most frequently drive other vehicles in your household.

¶ 33 This language unambiguously states that the list does not expand or extend coverage beyond that described in the policy. It merely indicates that allowing the people listed to drive the vehicle may influence the policy premium. We are not persuaded that the people listed as "Other Household Drivers" can be reasonably interpreted to be insureds covered by the policies.

¶ 34 We therefore conclude that the policies are not ambiguous, and Grippin is not entitled to coverage on those grounds.

B. Whether Grippin Had a Reasonable Expectation of Coverage

¶ 35 Finally, Grippin contends that he is entitled to coverage based on the doctrine of reasonable expectations. He argues that he had a reasonable expectation of coverage because he is listed as an "Other Household Driver" on the Auto Renewal forms and because a State Farm employee assured him after the accident that he was covered by the policies.

16

¶ 36    The doctrine of reasonable expectations "obligates insurers to clearly and adequately convey coverage-limiting provisions to insureds."  *Bailey*, 255 P.3d at 1048.  It arises mainly in two situations:

> (1) where an ordinary, objectively reasonable person would, based on the language of the policy, fail to understand that he or she is not entitled to the coverage at issue; and (2) where, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain otherwise.

*Id.* at 1048-49.  In those situations, the reasonable expectations of the insured will succeed over exclusionary policy language.  *Id.* at 1048.

¶ 37    "[T]he doctrine of reasonable expectations applies only to 'the reasonable expectations *of insureds*,' . . . and thus only after it is determined that the claimant is an insured."  *Hansen*, ¶ 30 (quoting *Bailey*, 255 P.3d at 1054).

¶ 38    Grippin argues that the Auto Renewal forms and the State Farm employee's statements created a reasonable expectation that he was an *insured*, and therefore entitled to coverage under the policies.  But because the doctrine of reasonable expectations

17

applies "only *after* it is determined that a claimant is an insured," Grippin cannot rely on it unless he is, in fact, an insured. *Id.* (emphasis added).

¶ 39 Whether Grippin is a resident relative and therefore an insured under the State Farm policies is a question of fact that has not yet been determined. As a result, we do not reach the question of whether the renewal forms or employee's statements created a reasonable expectation of coverage.

## V. Conclusion

¶ 40 The trial court's order granting summary judgment in favor of State Farm is reversed, and the case is remanded for further proceedings on Grippin's claims.

JUDGE J. JONES and JUDGE DUNN concur.