2016 COA 30M

**GEICO CASUALTY COMPANY,**
Plaintiff–Appellee,

v.

**Ryan D. COLLINS, Defendant–Appellant.**

**Court of Appeals No. 15CA0060**

Colorado Court of Appeals,
Div. VI.

Announced February 25, 2016
As Modified March 24, 2016

Deisch, Marion & Klaus, P.C., Gregory K. Falls, Denver, Colorado, for Plaintiff–Appellee.

The Rector Law Firm, L. Dan Rector, Terry E. Rector, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by JUDGE NAVARRO

¶ 1 Defendant, Ryan D. Collins, appeals the summary judgment entered against him and in favor of plaintiff, GEICO Casualty Company (GEICO). Ryan was injured in a motorcycle accident and sought underinsured motorist coverage under an insurance policy issued by GEICO to Amanda Collins, his wife at the time of the accident.[1] GEICO denied coverage on the ground that Ryan was not a "resident relative" under the policy because he did not reside in Amanda's household at the time of the accident. § 10–4–601(13), C.R.S.2015. This case thus presents the question whether spouses may be considered

---

1. We use the first name of each Collins to improve readability. They were married at the time of the accident but were divorced before this litigation commenced.

residents of the same household for purposes of insurance coverage when, although they remain married, they live apart. The answer to that question may be "yes," depending on the circumstances. Considering the circumstances of this case, however, we conclude that Ryan was not a resident of Amanda's household at the time of the accident and therefore was not a resident relative within the coverage provisions of the GEICO policy. Consequently, we affirm the summary judgment in favor of GEICO.

## I. Factual and Procedural History

### A. Relevant Facts

¶ 2 As both parties acknowledged in their cross-motions for summary judgment, the material facts are not in dispute. Ryan and Amanda were married in 2006 and purchased a house in 2010. They lived in the house with their children continuously, except for Ryan's periodic military deployments, until January 2013.

¶ 3 In January 2013, a petition for dissolution of their marriage was filed.[2] At the same time, Amanda sought, and a magistrate imposed, a temporary protection order against Ryan. The order forbade him from "contact of any kind" with her and the children. The order also required him to stay away from the house.

¶ 4 Amanda continued to live at the house until it was listed for sale in August 2013. After leaving the house in January 2013, Ryan stayed with a friend for a week before moving in with another pair of friends, with whom he stayed for at least a year thereafter. He did not sign a rental agreement or pay regular rent at either place. Although Ryan never lived in the Collinses' house again after January 2013 and the house was sold to a third party in October 2013, he did not seek to change his mailing address or the address on his driver's license until mid-2014.

¶ 5 After January 2013, virtually all communications between Ryan and Amanda were handled through their attorneys. She did not know his whereabouts. She bagged up his mail and transferred it to her attorney to give to Ryan's attorney. Amanda changed the locks and garage door opener at the house, and she did not give Ryan the new keys or opener. She continued making payments related to the house; he did not. Other than a brief law enforcement-authorized visit to the house to retrieve some personal property, Ryan did not enter the house again.

¶ 6 The couple co-owned two vehicles: a Jeep Cherokee and a motorcycle. Amanda kept possession of the Jeep, and Ryan took the motorcycle while the divorce was pending. She continued paying insurance premiums on both vehicles.

¶ 7 In February 2013, Amanda purchased a new policy from GEICO to cover the Jeep, which only she drove.[3] She informed the GEICO representative that she and Ryan were separated. She explained that she did not consider him to be a member of her household for purposes of the GEICO policy. In reliance on her representations, GEICO did not consider Ryan to be a resident of Amanda's household. Accordingly, the GEICO representative did not rate him for coverage under the policy, did not obtain his motor vehicle record to investigate his insurability, and entered a computer note stating that

2. In its motion for summary judgment, GEICO claimed that Amanda and Ryan had jointly filed the dissolution petition, and GEICO presented some evidence supporting that claim. In his response, Ryan suggested that Amanda alone had filed the petition, and he presented some evidence corroborating his suggestion. But neither GEICO nor Ryan contended in the district court (or on appeal) that this discrepancy presents a genuine issue as to a *material* fact.

3. In connection with the petition for dissolution, neither party was permitted, without the consent of the other or the divorce court, to cancel or modify various types of insurance, including automobile insurance. The record does not make clear whether Amanda's purchase of the GEICO policy was contrary to her obligations in the dissolution proceedings or whether Ryan consented to the changes to the coverage of the Jeep (although some evidence indicated that he did). Regardless, any alleged violation of the couple's duties in the dissolution case would be a separate grievance not relevant to this case. Neither Ryan nor GEICO argues that this question creates a disputed issue of material fact.

Amanda and Ryan were "estranged" and "separated."

¶ 8 In May 2013, Ryan was served with notice that the temporary protection order had become permanent. The permanent order prohibited him from any contact with Amanda and required him to stay away from the Collinses' house. Later in May 2013, Ryan was driving the motorcycle when he was injured in an accident with an underinsured motor vehicle.

¶ 9 In July 2013, Amanda and Ryan's divorce became final. In an affidavit, Ryan later asserted that, before the divorce became final, he had been "willing to explore reconciliation possibilities" but could not speak to Amanda. He did not assert that he had actually wished to reconcile with her or wished to move back into the house before his accident in May 2013. Nor did Ryan claim that he had communicated any such intentions to Amanda through her attorney.

¶ 10 In a deposition, Amanda acknowledged that Ryan once contacted her to say "sorry" but she refused to speak with him. She also said that, *after* the divorce was final and she had moved out of the house in August 2013, Ryan asked a realtor if he could move into the house (he could not because it was listed as "vacant"). (Ryan did not dispute these facts.) Amanda repeatedly and unequivocally testified that she never had any intention to reconcile with Ryan after January 2013. Consistent with Ryan's statement, Amanda explained that no discussion of reconciliation ever occurred, either directly or through their attorneys.

¶ 11 In September 2013, Ryan filed a claim with GEICO for underinsured motorist coverage related to his May 2013 accident. He alleged that, because he had been injured while still married to Amanda and he had not established another permanent residence, he was an insured under the terms of the GEICO policy issued to her.[4] GEICO denied the claim on the ground that Ryan was not a resident relative because he did not reside in Amanda's household at the time of the accident and; therefore, he was not an insured under the policy.

### B. Relevant GEICO Policy Provisions

¶ 12 Pursuant to the underinsured motorist provisions of the GEICO policy, GEICO "will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle, underinsured motor vehicle or hit-and-run auto arising out of the ownership, maintenance or use of that auto." (Alterations omitted.) As relevant here, "insured" means "[t]he individual named in the declarations and his or her spouse if a resident of the same household" or any other person using an "owned auto" with permission.

¶ 13 As pertinent here, "[o]wned auto" means a "vehicle described in this policy for which a premium charge is shown for these coverages." Because the Jeep was the only vehicle described in the GEICO policy, the motorcycle driven by Ryan was not an "owned auto." As a result, the only way Ryan could be entitled to underinsured motorist coverage under the GEICO policy would be to show that he was a "resident of the same household" as Amanda, which would qualify him as an insured.

### C. District Court Proceedings

¶ 14 Among other claims, GEICO and Ryan each sought declaratory relief by way of complaint and counterclaim on the issue of whether he was a resident of Amanda's household at the time of the motorcycle accident. GEICO and Ryan filed cross-motions for summary judgment on this coverage issue, asserting that no genuine issues of material fact existed.

¶ 15 The district court concluded that GEICO had properly denied coverage because Ryan was not a member of Amanda's household at the time of the accident. Therefore, the court granted summary judgment in favor of GEICO and denied Ryan's cross-motion for summary judgment. When denying his motion for reconsideration, the court modified its order and then dismissed the remaining claims—rendering the judgment final for purposes of appeal.

---

4. Ryan also filed a claim with Progressive Insurance, which insured the motorcycle.

## II. Analysis

¶ 16 Ryan contends that the district court erred in granting summary judgment to GEICO rather than to him. He argues that, under the undisputed facts, he was a "resident of the same household" as Amanda for purposes of the GEICO policy. We disagree.

### A. Standard of Review

¶ 17 We review de novo the grant of summary judgment. *McCarville v. City of Colorado Springs*, 2013 COA 169, ¶ 5, 338 P.3d 1033. "Summary judgment is appropriate when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11, 304 P.3d 239; *see* C.R.C.P. 56(c).

¶ 18 Insurance policies are subject to contract interpretation and are reviewed de novo, with the ultimate aim of effectuating the contracting parties' intentions. *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1050 (Colo.2011). Ambiguity in an insurance contract is construed against the insurer (as drafter) and in favor of the insured. *Hoff v. Indus. Claim Appeals Office*, 2014 COA 137M, ¶ 38, ___ P.3d ___ (cert. granted Sept. 8, 2015).

### B. Central Principles

¶ 19 Whether a person is a resident of a household for purposes of insurance coverage is determined by the facts and circumstances of each case. *Am. Family Mut. Ins. Co. v. DeWitt*, 216 P.3d 60, 64 (Colo.App. 2008), *aff'd*, 218 P.3d 318 (Colo.2009). Multiple factors bear upon this question, including:

> The subjective or declared intent of the individual, the formality or informality of the relationship between the individual and the members of the household; the existence of another place of lodging by the alleged resident, and the relative permanence or transient nature of the individual's residence in the household.

> No one factor by itself is determinative of the ultimate issue. All must be considered in light of the basic consideration of whether the parties to the insurance contract

intended that coverage would extend to the alleged insured.

*Iowa Nat'l Mut. Ins. Co. v. Boatright*, 33 Colo.App. 124, 127–28, 516 P.2d 439, 440–41 (1973) (citations omitted) (applying these factors and affirming summary judgment when the facts "were not disputed or contradicted and were probative of the fact that defendant met the criteria of being a resident of the household"); *see Potter v. State Farm Mut. Auto. Ins. Co.*, 996 P.2d 781, 783 (Colo.App. 2000) (considering the *Boatright* factors); *Midwest Mut. Ins. Co. v. Titus*, 849 P.2d 908, 910 (Colo.App.1993) (same); *Farmers Ins. Co. v. Plunkett*, 687 P.2d 470, 472 (Colo.App. 1984) (same).

¶ 20 Because no one factor by itself is determinative, we agree with Ryan that the fact he lived apart from Amanda at the time of the accident does not foreclose the possibility that he was a resident of her household. Similarly, the fact that they were married is not dispositive. Instead, we must examine the circumstances surrounding their separation and the purchase of the insurance policy. The critical questions are whether the spouses' separation was intended to be permanent and whether the contracting parties intended the insurance policy to cover both spouses. *See Titus*, 849 P.2d at 910 ("Consideration of all relevant circumstances must reveal 'some intended presence in the insured's home.'") (citation omitted); *see also Sanders v. Wausau Underwriters Ins. Co.*, 392 So.2d 343, 344 (Fla.Dist.Ct.App,1981) ("The test for whether a wife is no longer a member of her husband's household is not just physical absence, but physical absence coupled with an intent not to return."); *Forbes v. Harleysville Mut. Ins. Co.*, 322 Md. 689, 589 A.2d 944, 952–53 (1991) (collecting cases recognizing that whether a separated spouse remains a resident of the insured spouse's household depends on "the aggregate details of the living arrangements" and that a "common roof is not the controlling element") (citation omitted).

¶ 21 The focus on whether the spouses' separation was intended to be permanent or temporary comports with the pertinent statutory definitions. Section 10–4–601(5) defines "insured" to include "relatives of the

named insured who reside in the same household as the named insured," and section 10–4–601(13) defines "resident relative" to include a person who, at the time of the accident, is related by marriage to the named insured and who resides in the named insured's household, "even if *temporarily* living elsewhere." (Emphasis added.) These provisions also confirm that being married to the named insured is not sufficient in itself to qualify one as a resident relative; the spouse must also reside in the named insured's household.

### C. Application to this Case

¶ 22 Ryan argues that he was a resident of Amanda's household at the time of his accident because he and Amanda were still married and he had not yet established a permanent residence elsewhere. Therefore, he maintains that he was a resident relative and entitled to coverage under the GEICO policy. He also contends that, because the GEICO policy is ambiguous on this issue, the policy must be construed to cover him.

### 1. Alleged Ambiguity

¶ 23 The terms "resident" and "household" are not defined in the GEICO policy. According to Ryan, the phrase "resident of the same household" is therefore ambiguous because it has no fixed meaning.

¶ 24 Colorado case law recognizes, however, that the phrase "resident of the same household" in an insurance policy is not ambiguous. *Plunkett*, 687 P.2d at 472; *see United Servs. Auto. Ass'n v. Mione*, 34 Colo. App. 448, 451, 528 P.2d 420, 421 (1974) (rejecting the notion that "resident of a household" is ambiguous as applied to a minor); *cf. Pamperin v. Milwaukee Mut. Ins. Co.*, 55 Wis.2d 27, 197 N.W.2d 783, 789 (1972) (holding that "resident or member of the same household" is not ambiguous) (cited in *Boat-

right*, 33 Colo.App. at 127, 516 P.2d at 440). We agree with those cases.[5]

¶ 25 We now turn to the *Boatright* inquiry.

### 2. *Boatright* Analysis

#### a. Alleged Insured's Subjective or Declared Intent

¶ 26 To reiterate, before the motorcycle accident in May 2013, a petition for dissolution of the marriage between Amanda and Ryan had been filed, and he had moved in with friends. The record does not show that Ryan had intended to move back in with Amanda by the time of his accident. *See Wheeler v. Allstate Ins. Co.*, 814 P.2d 9, 10–11 (Colo.App.1991) (noting that the *Boatright* factors "presume, initially, some intended presence in the insured's home"). For instance, Ryan did not declare such intent in his affidavit or deposition testimony. His claim that he had been "willing to explore reconciliation possibilities" falls short of evidencing an affirmative intent to return to the house, especially where he did not declare such willingness during the relevant period (including to Amanda's attorney) while the dissolution proceedings were well under way. *Cf. id.* at 11 (concluding that adult child was not a resident of her mother's household when "nothing in the record would indicate any intention that she would return to her mother's home, even on a temporary basis").

¶ 27 We are not persuaded that Ryan's intent to return to the house was demonstrated by the facts that he did not change his mailing address or the address on his driver's license and he did not pay regular rent to his friends. In fact, he did not change his address until nearly a year after the Collinses' house was sold to a third party.

¶ 28 More importantly, at the time of the accident, the couple's dissolution proceedings had neared completion—unopposed by Ryan—and he had been *permanently* barred from any contact with Amanda and barred

---

5. We recognize that some out-of-state courts have found such a phrase to be ambiguous. Even so, those courts, when determining whether one is a resident of a household, have engaged in a comprehensive, context-based inquiry similar to the *Boatright* analysis used in Colorado, *Iowa National Mutual Insurance Co. v. Boatright*, 33 Colo.App. 124, 516 P.2d 439 (1973). *See, e.g., Aetna Cas. & Sur. Co. v. Miller*, 276 F.Supp. 341, 347 (D.Kan.1967); *Hobbs v. Fireman's Fund Am. Ins. Cos.*, 339 So.2d 28, 36 (La.Ct.App.1976); *Farmers Mut. Ins. Co. v. Tucker*, 213 W.Va. 16, 576 S.E.2d 261, 270 (2002).

from the house. Although the permanent protection order was imposed without Ryan's consent, the existence (and his awareness) of that order certainly bears upon whether he had intended to move back in with Amanda at the time of the accident. *See Hidalgo v. Boudreaux,* 693 So.2d 216, 218–19 (La.Ct. App.1997) (Due to a restraining order, husband and wife "could not be residents of the same household as [his] freedoms regarding the family home and [her] were severely hindered. There can be no membership in a group if one is not allowed to go near the group members....").

### b. Formality or Informality of the Couple's Relationship

¶ 29 In deciding that "the formality or informality of the relationship between the individual and the members of the household" may be relevant, *Boatright* relied on the Wisconsin Supreme Court's decision in *Pamperin. See Boatright,* 33 Colo.App. at 127, 516 P.2d at 440. *Pamperin* explained that "residents or members of a household" is "a phrase designative of a relationship where persons live together as a family and deal with each other in a close, intimate and informal relationship and not at arm's length." 197 N.W.2d at 787. Hence, an informal relationship between the alleged insured and named insured may suggest that they are residents of the same household, while a formal relationship (such as a lessor-lessee connection) suggests the opposite.

¶ 30 As Ryan correctly notes on appeal, he and Amanda had an informal relationship during their marriage before January 2013. But this connection was largely replaced with a more formal, legally restricted relationship when the dissolution petition and protection order were filed. After that time, they dealt with each other at arm's length: direct communications between them ceased, and their interaction was "severely hindered" by the orders in place. *Hidalgo,* 693 So.2d at 218. Therefore, although this *Boatright* factor cuts both ways here, on balance it weighs against the notion that Ryan was a resident of Amanda's household at the time of the accident.

### c. Another Place of Lodging for Alleged Insured

¶ 31 Ryan had another place of lodging at the time of the accident; he lived with friends. *See Boatright,* 33 Colo.App. at 127, 516 P.2d at 440; *cf. Plunkett,* 687 P.2d at 472 (concluding that housemates were residents of the same household where they had no other place of lodging). He contends, however, that he had not yet established another *permanent* place of lodging, in the sense that he had intended to make it his permanent home. But, even if true, that fact would show merely that Ryan had not established a new domicile. "In contrast [to the phrase 'residents of a household'], domicile 'requires bodily presence in [a] place coupled with an intention to make it one's permanent home.'" *Potter,* 996 P.2d at 783 (citation omitted).

¶ 32 A material difference between domicile and household is that "a domicile once acquired is not lost when a person leaves it ... until he establishes a domicile elsewhere." *Pamperin,* 197 N.W.2d at 788. The same is not true with respect to a household; "therefore, physical absence coupled with intent not to return is sufficient to sever the absent person's membership in the household." *Id.* ("Every person has a domicile but not every person is a member of a household."). As the district court aptly explained,

> [t]he mere fact that [Ryan] likely considered himself in a transitory state of his life until the divorce was finalized and he learned what was to become of the ... house has no bearing on the fact that whatever status he was in, it most definitely was not as a member of [Amanda's] household.

### d. Relative Permanence or Transient Nature of Alleged Insured's Presence in the Household

¶ 33 Ryan did not live with Amanda at the time of the accident; thus, his presence in her household was nonexistent, much less permanent. *See Boatright,* 33 Colo.App. at 127, 516 P.2d at 440; *cf. Titus,* 849 P.2d at 910 ("There was no evidence that [the child] was a resident of or temporarily absent from her father's household, having had no pres-

ence in it."). After their separation and before his accident; Ryan did not return to the house other than a brief law enforcement-authorized visit to retrieve some personal property. And, as discussed, the permanent protection order prohibited him from returning to the house.

¶ 34 Yet, it is true that, four months before the accident, Ryan was a resident of the same household as Amanda. The basic inquiry thus continues to be "whether the separation of the spouses was intended to be permanent without the prospect of reunion or only temporary with reconciliation possible." *Johnson v. Payne*, 549 N.E.2d 48, 50 (Ind.Ct.App.1990); *see Pamperin*, 197 N.W.2d at 788 (When the spouses do not live together at the time in question, "the absence from the family roof must be of a temporary nature with intent on the part of the absent person to return thereto."). As discussed, the record does not reveal Ryan's intent to return to Amanda's household. As for Amanda's intent, the record could not be clearer that his absence was permanent: she had no wish to share a household with him again. Amanda steadfastly denied any intent to reconcile after their separation in January 2013. *See Hidalgo*, 693 So.2d at 218–19 (concluding that wife was not a resident of her separated husband's household where he testified that reconciliation was not a possibility). And the couple did not have a history of reconciliation after separation. *Cf. Am. Cas. Co. v. Harleysville Ins.*, 238 Md. 322, 208 A.2d 597, 598 (1965) (noting that husband and wife had discussed reconciliation and had a history during their "stormy marriage" of separating and reconciling).

¶ 35 Given the dissolution petition, the permanent protection order barring Ryan from the house where Amanda lived, the undisputed evidence that the couple did not discuss or contemplate reconciliation, and their lack of contact after the dissolution petition, we conclude that Ryan's absence from Amanda's residence at the time of the accident was intended to be permanent. *See, e.g., John-*

son, 549 N.E.2d at 51 (concluding that a separated husband was not a resident of his wife's household where the couple never reconciled or lived in the same residence after their separation); *Calance v. Williams*, 989 So.2d 117, 118–19 (La.Ct.App.2008) (recognizing that a restraining order against one spouse shows that the spouses were not residents of the same household).

### e. Intent of the Parties to the Insurance Contract

¶ 36 Finally, we consider all of the relevant factors "in light of the basic consideration of whether the parties to the insurance contract intended that coverage would extend to the alleged insured." *Boatright*, 33 Colo.App. at 127, 516 P.2d at 440.

¶ 37 The undisputed facts show that the contracting parties—Amanda and GEICO—did not consider Ryan to be a resident of Amanda's household for purposes of the GEICO policy. In other words, Amanda and GEICO did not intend that Ryan would be covered under the underinsured motorist provisions of the policy. Hence, "the insurance contract was created based upon [the wife's] representations that she was the only driver residing in the household and the premium calculated based upon the fact that [she] was separated." *Johnson*, 549 N.E.2d at 50–51 (holding that husband was not a resident of his wife's household where she obtained the insurance policy *after* their separation and she told the insurance company about the separation); *see Hidalgo*, 693 So.2d at 218–19 (recognizing that the facts that husband purchased the insurance policy *after* he separated from wife and "he expressly intended that the policy not cover her" tended to show that they were not residents of the same household); *cf. Am. Cas. Co.*, 208 A.2d at 599 (Because the policy was purchased *before* the couple's separation, "the insurer's risk was no greater under the circumstances than was originally contemplated at the time of the issuance of the policy.").[6]

---

6. Ryan contends that the district court erroneously considered GEICO's "underwriting philosophy." But the court merely noted that, if GEICO had been advised that the policy was in-

tended to also cover Ryan, "it is a fair bet that this policy would likely have seen different underwriting standards." The court's comment was appropriate because, as discussed, the in-

¶ 38 Accordingly, under the totality of the circumstances of this case, Ryan was not a resident of Amanda's household at the time of his motorcycle accident.

### 3. Ryan's Other Cited Cases From Out of State

¶ 39 We are not persuaded otherwise by the out-of-state cases cited by Ryan. Those cases recognize that whether a person is a resident of the named insured's household for purposes of car insurance coverage depends on the circumstances. *See, e.g., Farmers Mut. Ins. Co. v. Tucker,* 213 W.Va. 16, 576 S.E.2d 261, 270 (2002) ("[A] determination of whether a person is a resident of a particular household is an elastic concept entirely dependent upon the context in which the question arises."). In that important sense, they align with our approach.

¶ 40 The factual circumstances of the cases cited by Ryan, however, differ materially from those of this case. *See Aetna Cas. & Sur. Co. v. Shambaugh,* 747 F.Supp. 1203, 1205 (N.D.W.Va.1990) (stating that child of divorced parents could be resident of both households because he spent time with both parents); *Aetna Cas. & Sur. Co. v. Miller,* 276 F.Supp. 341, 343, 347 (D.Kan.1967) (finding that separated spouses visited together after their separation and during these visits they "lived together as husband and wife" according to her, and the insurance policy had been taken out before the separation); *Hobbs v. Fireman's Fund Am. Ins. Cos.,* 339 So.2d 28, 36 (La.Ct.App.1976) (noting that policy was intended to cover separated wife, and she was free to return to the house); *Forbes,* 589 A.2d at 952–53 (finding that separated spouses had not discussed divorce, their separation was not intended to be permanent, and they likely intended the policy to insure both); *Am. Cas. Co.,* 208 A.2d at 598–99 (considering situation where separated wife returned to husband's household nearly every day, they had discussed reconciliation and had a history of separating and reconciling, and the couple intended that both would be covered under the policy that was purchased before their separation); *Tucker,* 576 S.E.2d at 270 (holding that adult child living rent-free on parent's property could be considered resident of parent's household).

### D. Summary Judgment Was Appropriate

¶ 41 The undisputed material facts of this case show that Ryan was not a resident of Amanda's household at the time of his motorcycle accident and thus was not a resident relative entitled to coverage under the GEICO policy.[7] Consequently, the district court properly granted summary judgment to GEICO on this coverage issue. *See Titus,* 849 P.2d at 909 (concluding that summary judgment was appropriate on this coverage question); *Plunkett,* 687 P.2d at 472–73 (same); *Boatright,* 33 Colo.App. at 127, 516 P.2d at 441 (same); *see also Shambaugh,* 747 F.Supp. at 1205 (same); *Calance,* 989 So.2d at 118–20 (same).

### III. Conclusion

¶ 42 The judgment is affirmed.

JUDGE TERRY and JUDGE FREYRE concur.

---

tent of the contracting parties (including the risk assumed by the insurer) is relevant. The court also explained, when denying Ryan's motion for reconsideration, that GEICO's underwriting standards were not significant to the court's summary judgment ruling. Regardless, the alleged error is inconsequential because we review de novo the order granting summary judgment.

7. In the "Relief Sought" section of his opening brief, Ryan seeks a remand for entry of an order extending underinsured motorist coverage under the GEICO policy to him. Alternatively, he seeks a remand for a jury trial. In the summary judgment proceedings, however, Ryan did not assert that a genuine issue of material fact existed that would preclude summary judgment. To the contrary, he moved for summary judgment himself. And, on appeal, he does not argue that a genuine issue of material fact exists. Such an appellate argument would have been too late in any event because "[o]n review of a summary judgment ruling, we do not consider arguments and evidence that were not presented to the trial court." *Luttgen v. Fischer,* 107 P.3d 1152, 1155 (Colo. App.2005).