24CA0035 Sorensen v USAA 11-21-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0035
El Paso County District Court No. 22CV32106
Honorable Thomas K. Kane, Judge

Nathan Sorensen and Amanda Sorensen, a/k/a Amanda Armstrong,

Plaintiffs-Appellants,

v.

USAA Casualty Insurance Company,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Johnson, J., concurs
Schock, J., concurs in part and dissents in part

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

Robert J. Anderson, P.C., Robert J. Anderson, Timothy G. Buxton, Scott F. Anderson, Colorado Springs, Colorado, for Plaintiff-Appellants

Rider Kafer, P.C., Kelly L. Kafer, Denver, Colorado, for Defendant-Appellee

¶ 1 Plaintiffs, Nathan and Amanda Sorensen, a/k/a Amanda Armstrong (collectively, the Sorensens), appeal the district court's grant of summary judgment in favor of USAA Casualty Insurance Company (USAA). We reverse and remand the case to the district court for further proceedings.

## I. Background

¶ 2 This appeal concerns an insurance dispute following an April 11, 2021, car accident in Colorado Springs involving the Sorensens and another driver, which the Sorensens allege caused them serious injuries. After the accident, the Sorensens made a claim for compensation through a USAA uninsured/underinsured motorist (UM/UIM) insurance policy (the policy) issued to Nathan's mother, Susan Sorensen.[1]

---

[1] The Toyota 4Runner driven by the Sorensens during the crash was not identified in the USAA policy. According to the Sorensens' complaint, the other driver's insurance policy was limited to $25,000 per person and $50,000 per accident, and the Sorensens' 4Runner was also insured by Geico for $25,000 per person and $50,000 per accident. The Geico policy paid out the full limit of its coverage.

¶ 3     Susan was listed as the "named insured" on the policy's declarations page, but Nathan, his sister Shannon Sorensen,[2] and Susan were also listed as "operators."  The policy defines a "covered person," i.e., a person who may be entitled to insurance coverage, as the individual listed as the named insured and her "family members."  The policy then defines family members as "a person related to [the named insured] by blood, marriage or adoption who resides primarily in [the named insured's] household."

¶ 4     Susan owns two properties in Colorado Springs, the "Garden Place" property and the "Bates Drive" property, about ten minutes apart by car.  At the time of the accident, Nathan and Amanda were living at the Bates Drive property while Susan lived at the Garden Place property.  While they did not have a formal lease agreement, Nathan testified that he paid Susan rent each month.  Susan's and Nathan's deposition testimony indicated that there was some degree of shared habitation between the two properties with each going "back and forth" between the properties.

---

[2] For clarity we will respectfully refer to Susan, Nathan, Shannon, and Amanda Sorensen by their first names.

¶ 5     Susan's address on the policy was the Garden Place property and Nathan lived at the Bates Drive property, so USAA rejected the Sorensens' UM/UIM claim as Nathan did not meet the definition of a family member and thus was not deemed a covered person.  The Sorensens later sued, arguing that (1) the USAA policy did not differentiate between an operator and a named insured on the declarations page; (2) Susan was charged a premium for Nathan to be on the policy; and (3) Susan and Nathan reasonably believed that he was insured.  As relevant here, the Sorensens contended Nathan was entitled to UM/UIM benefits.[3]

¶ 6     USAA and the Sorensens filed competing motions for summary judgment pursuant to C.R.C.P. 56.  The district court granted summary judgment in favor of USAA, finding that (1) the term "covered persons" was unambiguous and (2) the Sorensens were not covered persons under the policy because they were not named insureds nor did they reside in Susan's household and thus were not qualifying family members.

---

[3] The Sorensens also raised a claim for unreasonable denial or delay of insurance benefits under sections 10-3-1115(1)(a) and -1116(1), C.R.S. 2024, and requested damages.

¶ 7     This appeal followed. The Sorensens argue that the USAA policy's term "operator" is ambiguous and there is effectively no difference between a named insured and an operator. They contended this was particularly true as USAA was charging a premium to include Nathan on the policy, thus, under the "reasonable expectations" doctrine, Nathan would have reasonably understood that he was covered by the policy and was entitled to coverage. Alternatively, they assert that, given the "fluid" households Nathan and Susan shared, Nathan and Amanda met the criteria of a covered family member under the USAA policy. These contentions were preserved. *See Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25.

## II.     Analysis

### A.     Standard of Review

¶ 8     "An insurance policy is a contract, the interpretation of which is a matter of law that we review de novo." *Farmers Ins. Exch. v. Kretzer*, 2023 COA 94, ¶ 11. If an insurance contract is unambiguous, we interpret it in a manner that effectuates the intent of the parties. We give words and phrases in an insurance policy their plain, everyday meaning and may not force strained

constructions. *Id.* at ¶¶ 11-12. But when a contract is within a trade or technical field, like insurance, and unless a different intent is manifested, "technical terms and words of art are given their technical meaning when used in a transaction within their technical field." *People ex rel. Rein v. Jacobs*, 2020 CO 50, ¶ 43 (quoting *Bledsoe Land Co. v. Forest Oil Corp.*, 277 P.3d 838, 843 (Colo. App. 2011)). "The language of an insurance contract is determinative of the parties' intent." *Kretzer*, ¶ 11.

¶ 9    "Whether an insurance policy is ambiguous is a question of law." *Id.* at ¶ 12. "A policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation." *USAA Cas. Ins. Co. v. Anglum*, 119 P.3d 1058, 1059-60 (Colo. 2005). "An ambiguity must appear in the four corners of the document *before* extrinsic evidence can be considered. In other words, extrinsic evidence cannot create ambiguity; it is an aid to ascertaining the intent of the parties once an ambiguity is found." *Am. Fam. Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶ 4 (citation omitted). "Undefined terms do not create ambiguity if the provision can be understood by considering its context." *Usick v. Am. Fam. Mut. Ins. Co.*, 131 P.3d 1195, 1200 (Colo. App. 2006).

¶ 10    "When 'an insurer seeks to restrict coverage, the limitation must be clearly expressed.'  If the limitation is 'ambiguous, then the contract must be construed in favor of coverage and against' the limitation."  *Kretzer*, ¶ 13 (citation omitted).

¶ 11    Finally, "we review de novo orders granting summary judgment."  *Essentia Ins. Co. v. Hughes*, 2024 CO 17, ¶ 20.  Summary judgment is a high bar, and only appropriate when undisputed material facts in the parties' pleadings and supporting documentation prove that, as a matter of law, the moving party is entitled to judgment in its favor.  *See id.*  "When considering a motion for summary judgment, 'a court must grant the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and it must resolve all doubts against the moving party.'"  *Id.* (citation omitted).

### B.    The USAA Agreement is Ambiguous

¶ 12    We start with whether the policy is ambiguous — i.e., whether, solely based on the language of the contract itself, it is susceptible to more than one reasonable interpretation.  *See Hansen*, ¶ 4; *Anglum*, 119 P.3d at 1059-60.

6

¶ 13    It is true that the policy unambiguously defines who meets the criteria of a covered person. In its UM/UIM coverage section, the policy defines covered persons as (1) the named insured on the policy's declarations page and their spouse if they reside in the same household; (2) the named insured's family members; (3) anyone "occupying or using" a "covered auto"; or (4) anyone who is entitled to recover damages covered by the policy because of bodily injury or property damage "sustained by" the named insured, their family, or anyone occupying or using a covered auto. But simply because the policy unambiguously defines covered persons does not resolve the issue at hand. The question remains, what is an operator? And does this create ambiguity for who is considered a named insured?

¶ 14    The term operator is not defined anywhere in the policy.[4]  And while Susan is the only person listed in the named insured box on the declarations page, Susan, Nathan, and Shannon are all listed as operators right next to this box.  The result is that the meaning and significance of being classified as an operator is unclear — and makes the policy ambiguous because the terms of the policy allow at least three reasonable interpretations of operator.  *See Hansen,* ¶ 4.

¶ 15    One possible interpretation is that the term has no significant meaning, and operator is merely synonymous with "driver" in a broader sense.  Indeed, this seems to be how the policy uses the term elsewhere in the contract.  In the UM/UIM section of the policy when defining "uninsured motor vehicle," the policy explains that

---

[4] The plain, everyday meaning of operator does little to illuminate the intent of the parties here, unfortunately.  Merriam-Webster, in the most pertinent definition, defines an operator as "one that operates," giving as an example "one that operates a machine or device."  Merriam-Webster Dictionary, https://perma.cc/7JYV-XV38.  Black's Law Dictionary defines "operate" in the most pertinent sense as "[t]o direct, put into action, or maintain the functioning of, esp. by direct personal effort; to engage, use, and control (a machine, computer, equipment, etc.)."  Black's Law Dictionary 1312 (12th ed. 2024).  The everyday meaning of operator is clear, but this tells us little about the Sorensens' or USAA's intent for those classified as operators.

one possible definition is a "hit-and-run motor vehicle," meaning a vehicle whose "owner or operator" cannot be identified. Another example comes from the policy's UM/UIM section explaining when it will pay compensatory damages, where it provides that damages must arise out of an "owner's or operator's" liability for the ownership, use, or maintenance of an uninsured vehicle.

¶ 16     But using the term operator as a synonym for the word "driver" creates its own ambiguity. While the insurance code does not define "operator," §§ 10-4-601 to -643, C.R.S. 2024, section 10-4-640(1), C.R.S. 2024, authorizes insurers to underwrite an "operator's policy of liability insurance," which an insured may purchase in lieu of an owner's policy of insurance. But such policies have certain limitations and requirements that differ from an owner's policy of insurance. *See* § 10-4-640. We normally would give effect to the term of art definition in a technical field, but an "operator" and "driver" are not synonymous in the insurance code. *See Jacobs*, ¶ 43.

¶ 17     And the policy also seems to attach some significance to the term operator beyond simply using it as a synonym for driver. The best example is that the declarations page itself carves out a special

section for operators it identifies by name, including Susan, which contradicts a broader use of the term.

¶ 18    A second possible interpretation is that "operator" only relates to the individuals USAA takes into account for purposes of charging a premium. The best support for this interpretation is that in the policy's general provisions section, it provides that changes in premiums can be the result of any changes to the number of operators driving a covered vehicle or any changes to an operator's age, marital status, driver's license information, or driving record.

¶ 19    Yet the policy's general provisions section tells a reader nothing about whether an operator might be entitled to coverage. To the contrary, nothing in the policy explicitly demands that an operator meet the definition of covered person or family member for coverage, and yet an insured may be charged a premium for including operators. Thus, if an operator is not inherently entitled to any coverage — and USAA in some situations would not have to compensate an operator in the event of an accident — without some explanation of what constitutes an operator, a reader may wonder whether USAA charges the insured for the operators or takes into consideration the operators for setting the premium. Thus, an

10

ordinary reader may interpret the term to mean that an operator is entitled to some form of insurance coverage if a premium is paid to include them. *See Grippin v. State Farm Mut. Auto. Ins. Co.*, 2016 COA 127, ¶¶ 31-33 (finding that an "other household driver" provision in an insurance policy did not support the persons listed to be insureds because the express language of the policy indicated that those individuals were only considered for purposes of determining the amount of the premium).

¶ 20    A final example of a possible interpretation of operators is that the policy uses operators as a list of all the named insureds in a policy. After all, Susan, the named insured, is certainly entitled to coverage and she is listed as an operator alongside Nathan and Shannon, potentially giving an ordinary reader the impression that all operators are entitled to some form of coverage as they are "named" on the declarations page. Though the declarations page has a specific box for the "named insured" and only Susan's name appears there, it is not unusual for there to be multiple insureds covered under one policy and USAA put multiple names in the "operator" box — including Susan's.

11

¶ 21    Each of these possibilities are reasonable ways an ordinary reader might interpret the policy and the term operator.  For this reason, and because it is unclear from the policy alone what the parties intended the term to mean — the policy is ambiguous.  We thus turn to extrinsic evidence to determine the intent of the parties.  *See Hansen*, ¶ 4.

C.    Extrinsic Intent and Understanding Evidence

¶ 22    Most of the extrinsic evidence available to us in the record to discern USAA's and Susan's intent when entering into the policy comes from Susan's and Jose Segura's depositions.  Segura is an "underwriting business and controls advisor for USAA" who served as a corporate representative for USAA.

¶ 23    Susan could not recall much of her substantive discussions with USAA.  Testifying in response to whether she could recall "any conversations with USAA about the substance of your coverages, who was covered under the policy," she said, "No."  And when asked if she could recall "any communications with USAA discussing under what circumstances Nathan would or would not have coverage," she testified that "I don't think there was ever a conversation like that."  But Susan believed that Nathan was

insured by the policy. Most notably, USAA's counsel asked: "Do you recall having any discussions with Nathan about, you know, that he would be covered under the USAA policy or anything like that?" Susan responded, "No, obviously I thought he was insured. Is he not insured?"

¶ 24 In response to USAA's counsel's question about whether there was a "specific reason" Susan last reached out to USAA, she said that she did so because Nathan "needed insurance." USAA's counsel also asked, "Was there anything about the declaration page you reviewed that was sent out in the mail that would make you think Nate was not an insured person?" Susan responded, "No, it looks like he's an insured person."

¶ 25 Susan further testified that she could not recall any conversations with USAA where she was told Nathan was not insured. And in the partial transcript of the phone call between Susan and the USAA representative when Susan got the policy, the USAA representative did not state whether Nathan and Shannon would be included in the policy. The transcript details that Susan stated that Nathan and Shannon were licensed drivers in her household.

¶ 26    Segura provided more information in his deposition about how USAA creates its policies and what an operator is, but the information he provided is somewhat contradictory.  Segura testified that USAA's "policy administration system" was designed to only allow "the eligible member that we're writing the policy under to be considered that named insured for purposes of declarations page generation. . . .  [T]here's no way for someone to manually intervene and change that name or add additional names to that field."  Thus, even if someone wanted to purchase a policy that explicitly included multiple people as named insureds, such as family members, there would be no way for USAA to do that in a single policy.

¶ 27    As to what operators are, Segura testified that "operators are essentially someone that we are needing to account for within the policy for purposes of risk and rate calculations."  The Sorensens' counsel later asked, "is it fair for me to say that USAA is taking account for operators to charge [a] different premium based on who is listed as an operator?"  Segura responded, "Yes.  Trying to account for the appropriate risk for the policy, yes."  Segura also confirmed that the term operator is undefined in the policy but

14

noted that "when we are looking at trying to identify all applicable operators for a policy besides the named insured, we're trying to identify individuals who are living within the household, who a[re] licensed, and have a dependency relationship with the insured."

¶ 28 The Sorensens' counsel also asked, "Are there any benefits or protections that a named insured receives that a named operator does not?" And Segura responded, "No. No additional benefits." Following up on this, the Sorensens' counsel then asked, "But does USAA, in terms of coverage decisions and who is covered, treat operators who are listed under that operator section differently than the people named under the named insured section?" Segura again responded, "No."

¶ 29 Collectively, the deposition testimony gives us some insight into the respective parties' intents and understanding, though the two parties' conceptions of the policy conflict in part. Susan seemingly intended to provide Nathan with insurance, and from her reading of the declarations page, she believed that Nathan was covered by the policy. Segura, however, seemed to indicate that, on one hand, USAA only considered operators as potential drivers to determine what premiums to charge the named insured. On the

15

other hand, Segura also said that the named insured receives no additional benefits than an operator would and that USAA treats operators and the named insured the same.  Furthermore, even if an insured wished to explicitly make one of their family members a named insured on the policy to ensure they received coverage (assuming this was negotiated with USAA), USAA's software would not allow this.

### D.    The Ambiguity in the Policy Must be Construed Against USAA and in Favor of Coverage

¶ 30    The Sorensens argue that Nathan should be treated as a named insured because the policy does not distinguish between an operator and a named insured, and an ordinary reader would conclude that operators are insured under the policy.[5]  Such an interpretation, the Sorensens argue, gives effect to Susan's intent to

---

[5] The Sorensens' brief relies heavily on the reasonable expectations doctrine as detailed in *Bailey v. Lincoln General Insurance Co.*, 255 P.3d 1039, 1048-49 (Colo. 2011).  The reasonable expectations doctrine is one of the ways that we subject insurance contracts to heightened scrutiny, but the doctrine focuses on questions of ambiguity surrounding the scope of insurance coverage after it is determined that a claimant is indeed an insured.  *See id.*; *see also Am. Fam. Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶ 30.  Here, however, if we resolve the ambiguity in favor of extending coverage to operators, then we need not reach the reasonable expectations doctrine.

16

insure herself, Nathan, and Shannon, and matches her understanding of the policy and its declarations page.

¶ 31    As discussed above, such an interpretation is reasonable in light of the policy's ambiguity concerning the significance of the term operator.  The policy explains that a covered person is the individual listed as the "named insured" on the declarations page, and an ordinary reader might reasonably interpret this to mean that all individuals listed by name on the declarations page are covered persons, particularly as this list includes Susan.  This is especially reasonable considering Segura's deposition testimony that USAA treats operators and the named insured the same, and this was also Susan's understanding of the policy.

¶ 32    And while we have precedent to guide us concerning the meaning of a named insured, it does little to negate the potential reasonableness of this interpretation.  As the Colorado Supreme Court stated, "[t]he named insured is the party who contracts for insurance and whose background and driving experience determines the premium which must be paid for the policy."  *Mid-Century Ins. Co. v. Liljestrand*, 620 P.2d 1064, 1066 (Colo. 1980).  "Because the identification of the named insured is of paramount

interest to the insurer, in interpreting insurance policies, courts have held that the term 'named insured' has a restricted meaning and does not apply to any persons other than those named in the policy." *D.C. Concrete Mgmt., Inc. v. Mid-Century Ins. Co.*, 39 P.3d 1205, 1207 (Colo. App. 2001).

¶ 33    Here, while Susan was the party contracting for the insurance, Susan's, Nathan's, and Shannon's driving records were all considered in determining Susan's premium as operators.[6] *See Liljestrand*, 620 P.2d at 1066. And while Susan was the only individual listed in the specific named insured box on the declarations page, technically speaking Nathan and Shannon are also "named" on the declarations page. *See D.C. Concrete Mgmt., Inc.*, 39 P.3d at 1207.

¶ 34    USAA, however, argues that nothing in the policy indicates that an operator is equivalent to being a named insured or covered person and that nothing in the policy suggests operators are entitled to coverage. USAA argues further that because the policy's

---

[6] USAA notes in its brief that it did not charge Susan a premium for including Nathan on the policy, but also contends that it would be "hardly inappropriate" for it to do so as it does take other drivers into account when deciding premiums.

provisions explaining who is a covered person are not ambiguous, the fact that Susan is also listed as an operator in the policy does not create any ambiguity. USAA thus contends that our analysis should begin and end with the policy's explanation of covered persons. And indeed, the declarations page does have a specific box for the "named insured" and it only included Susan. Such an interpretation is also reasonable.

¶ 35    In the end, however, while the term covered persons is unambiguous in its reference to named persons, it is the ambiguity within the policy itself surrounding what an operator is — and the explicit naming of individuals on the declarations page as operators (including Susan) without defining what this means — that creates ambiguity as to who the policy covers. *Compare id.* at 1207-08 (where named insured was listed as "Rafael Sanchez DC Concrete Management," it was unclear whether this was one or two named insureds, and thus it was ambiguous and construed in favor of coverage), *with Hansen,* ¶¶ 24-25 (there was no ambiguity concerning the identity of the named insured when the declarations page unambiguously listed "Davis William & Joyce" as the named insureds and the plaintiff's name was Hansen, regardless of

19

extrinsic evidence that suggested otherwise); *and Grippin*, ¶¶ 29-31 ("[T]he declarations pages of each policy state unambiguously that the named insureds are Lora Grippin, Patty J. Hall, and James W. Hall, respectively" and did not include Shane Grippin, so Shane was not a named insured regardless of extrinsic evidence that may have created ambiguity).  And unlike in policies with arguably similar provisions — such as policies that include references to "other household drivers" used to calculate premiums — the policy here never explicitly explained that being an operator limits any insurance coverage.  *See Grippin*, ¶¶ 32-33.  Had USAA wanted to remove any ambiguity concerning whether operators are entitled to coverage, all it had to do was define the term *somewhere* in the policy — yet it chose not to do so.

¶ 36    In the face of this ambiguity and two competing reasonable interpretations asserted by the respective parties, we must construe the ambiguity in the policy against its drafter and in favor of coverage.  *See Kretzer*, ¶ 13; *see also Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 291-92 (Colo. 2005) (between competing reasonable interpretations advanced by the insured and insurer, the ambiguity is resolved in favor of coverage).

¶ 37    As a result, we conclude the district court erred by granting summary judgment in favor of USAA.  *See Hughes*, ¶ 20.  We also therefore do not address the Sorensens' alternative contention that Nathan should have been considered a resident family member under the policy.

### III.    Whether Amanda is a Resident of the Household is a Fact Question

¶ 38    The Sorensens contend on appeal that because Nathan must be treated as a named insured under the policy, "then Amanda also becomes insured as a resident relative to Nathan."  That we conclude that the ambiguity in the policy must be construed in favor of extending coverage to operators, however, does not resolve the fact question of whether Amanda is a resident family member of Susan's or Nathan's household as defined by the policy.

¶ 39    The record contains conflicting evidence about whether Nathan is a member of Susan's household at the Garden Place property, the Bates Drive property, or both.  *See GEICO Cas. Co. v. Collins*, 2016 COA 30M, ¶ 19 ("Whether a person is a resident of a household for purposes of insurance coverage is determined by the facts and circumstances of each case."); *see also Scoular Co. v.*

*Denney*, 151 P.3d 615, 620 (Colo. App. 2006) (matters of factual dispute only become matters of law "if reasonable persons could draw only one conclusion from the evidence"). Thus, whether Amanda is entitled to coverage as a resident family member of Nathan's household under the policy is a question the fact finder must resolve.

## IV. Disposition

The district court's judgment is reversed, and the case is remanded for further proceedings on the Sorensens' claims in accordance with this opinion.

JUDGE JOHNSON concurs.

JUDGE SCHOCK concurs in part and dissents in part.

JUDGE SCHOCK, concurring in part and dissenting in part.

¶ 41    The insurance policy in this case provides that a "covered person" includes the "named insured" shown on the Declarations. The Declarations identify the "named insured" as Susan Sorensen. Because I would conclude that this makes the policy unambiguous that Susan — and only Susan — is the named insured, I respectfully dissent from the majority's conclusion that the policy is ambiguous as to whether Nathan Sorensen is a named insured.

## I.    Covered Person

¶ 42    We interpret an insurance policy like any other contract. *Farmers Ins. Exch. v. Kretzer*, 2023 COA 94, ¶ 11.  That means that when the policy language is "clear and unambiguous on its face," we must enforce the policy as written.  *Id.* at ¶ 12.  A contractual provision is ambiguous only if it is "susceptible on its face to more than one reasonable interpretation."  *Id.* (citation omitted).

¶ 43    As the majority correctly concludes, the insurance policy unambiguously defines "covered person" to include, as relevant to this case, (1) "You" or (2) "any family member."  It defines "You" to mean "the 'named insured' shown on the Declarations and spouse if a resident of the same household."  And it defines "family member"

23

as "a person related to [the named insured] by blood, marriage or adoption who resides primarily in [the named insured's] household." Thus, plaintiffs' entitlement to coverage turns on whether they qualify as either "the 'named insured' shown on the Declarations," or a "family member" of the named insured.

## II. Named Insured

¶ 44 In my view, there is only one reasonable interpretation of "the 'named insured' shown on the Declarations." The Declarations page, which is attached to the insurance policy, includes a box labeled "Named Insured and Address." That box includes one name: Susan Sorensen. I do not think we need go any further than that to determine that the only named insured is Susan. *See Am. Fam. Mut. Ins. Co. v. Hansen*, 2016 CO 46, ¶¶ 23-24 (holding that insurance contract was unambiguous as to identity of the insureds where the declarations page named the insureds); *Grippin v. State Farm Mut. Auto. Ins. Co.*, 2016 COA 127, ¶ 31 (concluding that policy was unambiguous as to identity of the insureds where the named insureds on the declarations page did not include plaintiff).

¶ 45 The majority concludes that the policy is ambiguous on this point because there is *another* box on the Declarations page that

24

lists "operators," and Nathan is identified in *that* box. While I agree that the term "operator" may be ambiguous, I do not think we need to interpret that term because it is a separate and distinct category from the "named insured," and Nathan does not seek coverage as an "operator." *See Grippin*, ¶¶ 32-33 (concluding that listing plaintiff as an "other household driver" did not make policy ambiguous as to whether he was an insured). Nor does the policy's use of the phrase "named insured" otherwise refer to operators.

¶ 46    In other words, whatever it means for Nathan to be an "operator," he is not the named insured. And whatever it means for Susan to *also* be an "operator," she *is* the named insured. Simply put, the "named insured" is the person named in the box that says "named insured" — regardless of who or what an operator is.

¶ 47    Moreover, although I do not think it is necessary to consider *why* the Declarations page might have identified "operators," I note that the policy covers any person using any vehicle identified on the Declarations. Correspondingly, the premium for the policy may take into account the number, identities, and driving records of the operators. Thus, it makes sense that the policy would identify operators of the covered vehicles, in addition to the named insured.

25

¶ 48　In any event, I disagree with the majority that the term "operators" can reasonably be read as a "list of all the named insureds" when there is a separate box for the named insured. *See Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 700 (Colo. 2009) ("We choose a construction of the contract that harmonizes provisions instead of rendering them superfluous."). To the contrary, "[t]he use of different terms in the policy signals that those terms should be afforded different meanings." *Weitz Co. v. Mid-Century Ins. Co.*, 181 P.3d 309, 313 (Colo. App. 2007).

¶ 49　Because I would conclude that the policy is unambiguous that Nathan is not a named insured, I would not consider extrinsic evidence of the parties' intent. *See Hansen*, ¶ 28. Nor would I consider Nathan's arguments as to his reasonable expectations. *See id.* at ¶ 30 (noting that doctrine of reasonable expectations applies "only after it is determined that the claimant is an insured").

### III.　Family Member

¶ 50　Having concluded that Nathan is not entitled to coverage as a named insured, I turn to whether he and Amanda Sorensen are entitled to coverage as "family members" of Susan. As noted above, under the terms of the policy, this turns on whether Nathan and

Amanda reside in Susan's household. *See Grippin*, ¶ 26 (holding that provision requiring a relative to reside "primarily" with named insured violates public policy and is void). On this question, I agree with the majority that there are genuine issues of material fact that preclude summary judgment.

¶ 51 The Sorensens presented evidence that Susan owned two homes that were "interchangeable" in the sense that she and her children, including Nathan, all had keys to both homes and "come and go as they want." Although the Sorensens primarily stay in one home and Susan in another, they go back and forth between the two. Susan pays for property taxes, insurance, and other expenses at both properties, and both she and Nathan keep belongings at both homes. And when Susan purchased the insurance policy in this case, she described Nathan as a member of her household.

¶ 52 Whether a person is a resident of an insured's household depends on the facts and circumstances of each case, including the person's subjective or declared intent, the formality or informality of the relationship, the existence of another place of lodging, and the relative permanence or transience of the person's residence in the household. *GEICO Cas. Co. v. Collins*, 2016 COA 30M, ¶ 19. For

27

purposes of this analysis, a person may "reside" in more than one place. *Grippin*, ¶¶ 18-19. It is therefore not determinative, as the district court's summary judgment order suggested, that the person also has another residence, so long as "all relevant circumstances . . . reveal 'some intended presence in the insured's home.'" *Id.* at ¶ 19 (citation omitted). The overarching consideration is "whether the parties to the insurance contract intended that coverage would extend to the alleged insured." *Id.* at ¶ 15 (citation omitted).

¶ 53　　To be entitled to summary judgment, the moving party must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at ¶ 8; *see also* C.R.C.P. 56(c). Given the fact-intensive nature of the inquiry and allowing the Sorensens the benefit of all reasonable favorable inferences, *see Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 20, reasonable people could draw conflicting inferences as to whether the Sorensens reside in Susan's household. *See Fin. Assocs., Ltd. v. G.E. Johnson Constr. Co.*, 723 P.2d 135, 138 (Colo. 1986) ("An issue of fact may arise from the existence of conflicting permissible inferences from evidence accepted as true."). I would therefore conclude that the district court erred by granting summary judgment on this issue.

## IV.   Conclusion

¶ 54    Thus, based on the plain language of the policy, I would conclude that the district court correctly determined that Nathan was not a named insured under the policy.  I would reverse the district court's summary judgment order to the extent it ruled that the Sorensens were not entitled to coverage as "family members," and I would remand for resolution of that factual question.